## FOSTER ET AL. *v.* ILLINOIS.

No. 540.   Argued May 8, 1947.—Decided June 23, 1947.

*Charles R. Kaufman* argued the cause and filed a brief for petitioners.

*William C. Wines,* Assistant Attorney General of Illinois, argued the cause for respondent. With him on the brief were *George F. Barrett,* Attorney General, and *James C. Murray,* Assistant Attorney General.

Briefs of *amici curiae* urging affirmance were filed by *Eugene F. Black,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Daniel J. O'Hara,* Assistant Attorney General, for the State of Michigan; and *Sterry R. Waterman* for the State of Vermont.

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

This is an original proceeding in the Supreme Court of Illinois by way of writ of error to test the validity of sentences of imprisonment following pleas of guilty. The Supreme Court of Illinois having affirmed the judgment, 394 Ill. 194, 68 N. E. 2d 252, we brought the case here, 329 U. S. 712, because of the importance of reviewing convictions where solid doubt is raised whether the requirements of due process have been observed.

On February 22, 1935, the petitioners were sentenced to confinement in the Illinois State Penitentiary, under the Illinois State indeterminate sentence law, after pleading guilty to an indictment charging them with burglary and larceny. Cahill's Ill. Rev. Stats. (1933) c. 38, §§ 65, 796. Since the controversy turns on the legal significance of the circumstances under which the pleas of guilty were accepted, it is important to state them according to the record which, for purposes of this proceeding, is binding upon the Illinois Supreme Court and therefore upon this Court. According to the "Minutes from the Judges Docket," the defendants Foster and Payne (petitioners here)

136

"having been furnished with a copy of the Indictment and a list of the Jurors and Peoples Witnesses and are advised of their rights of Trial and of the consequences of an entry of a plea of guilty and being arraigned in open Court for plea to the Indictment says, each for himself That he is guilty of burglary and larceny as charged in the indictment and thereupon the Court advises and admonishes each of said defendants of the consequences of entering such pleas of guilty, and Thereafter each of said defendants still persist in such pleas of guilty . . . Whereupon said pleas of guilty are received and entered of record."

"The Court finds the ages of said defendants to be as follows, respectively, Nelson Foster 34 years old, George Payne, alias Elijah Jefferson 48 years . . . ."

Eleven years later, on February 7, 1946, the petitioners asked the Supreme Court of Illinois for their discharge. Various state grounds were urged and rejected. Our sole concern is with the claim "that the record in this case fails to show" a compliance with the Fourteenth Amendment insofar as the Due Process Clause of that Amendment requires an accused to have the benefit of counsel.

The considerations that guide the disposition of this case have been canvassed here in a series of recent opinions. The "due process of law" which the Fourteenth Amendment exacts from the States is a conception of fundamental justice. See *Hebert* v. *Louisiana,* 272 U. S. 312, 316; *Palko* v. *Connecticut,* 302 U. S. 319, 325. It is not satisfied by merely formal procedural correctness, nor is it confined by any absolute rule such as that which the Sixth Amendment contains in securing to an accused "the Assistance of Counsel for his defence." By virtue of that provision, counsel must be furnished to an indigent de-

fendant prosecuted in a federal court in every case, whatever the circumstances. See *Palko* v. *Connecticut, supra,* at 327; *Johnson* v. *Zerbst,* 304 U. S. 458; *Betts* v. *Brady,* 316 U. S. 455, 464–65. Prosecutions in State courts are not subject to this fixed requirement. So we have held upon fullest consideration. *Betts* v. *Brady, supra.* But process of law in order to be "due" does require that a State give a defendant ample opportunity to meet an accusation. And so, in the circumstances of a "particular situation," assignment of counsel may be "essential to the substance of a hearing" as part of the due process which the Fourteenth Amendment exacts from a State which imposes sentence. *Palko* v. *Connecticut, supra,* at 327. Such need may exist whether an accused contests a charge against him or pleads guilty.

The rationale of this application of due process was first expounded in *Powell* v. *Alabama,* 287 U. S. 45. In following that case our recent decisions have spoken of "the rule of *Powell* v. *Alabama,*" or "the requirements of *Powell* v. *Alabama,*" thereby indicating the essential scope of the doctrine. See *Williams* v. *Kaiser,* 323 U. S. 471, 476–77; *Tomkins* v. *Missouri,* 323 U. S. 485, 488. And so, in every case in which this doctrine was invoked and due process was found wanting, the prisoner sustained the burden of proving, or was prepared to prove but was denied opportunity, that for want of benefit of counsel an ingredient of unfairness actively operated in the process that resulted in his confinement. See *Powell* v. *Alabama, supra,* at 51, 53, 56, 57–58; *Smith* v. *O'Grady,* 312 U. S. 329, 334; *Williams* v. *Kaiser, supra,* at 472, 473–74, and 476–77; *Tomkins* v. *Missouri, supra,* at 486–487; *House* v. *Mayo,* 324 U. S. 42, 45–46; *White* v. *Ragen,* 324 U. S. 760, 762–63; *Rice* v. *Olson,* 324 U. S. 786, 788–89. Only the other day, in a case concerning a charge of first-degree murder against a seventeen-year-old defendant, in which

we found a deprivation "of rights essential to a fair hearing," we took pains to point out that "The court did not explain the consequences of the plea of guilty, and the record indicates considerable confusion in petitioner's mind at the time of the arraignment as to the effect of such a plea." *De Meerleer* v. *Michigan,* 329 U. S. 663, 664.

In this case there is neither proof nor uncontradicted allegation of any such miscarriage of justice in accepting pleas of guilty. The record of the proceeding plainly imports an observance of due process. In the contemporaneous language of the trial court, the defendants "are advised of their rights of Trial and of the consequences of an entry of a plea of guilty," the court "advises and admonishes each of said defendants of the consequences of entering such pleas of guilty," and the defendants thereafter still persisting, their pleas "are received and entered of record." There was nothing in the common-law record, on the basis of which the Supreme Court of Illinois rendered its decision, to contradict this account of the proceedings in 1935. We thus have in effect the bald claim that, merely because the record does not disclose an offer of counsel to a defendant upon a plea of guilty, although the court before accepting the plea duly advised him of his "rights of Trial" and of the consequences of such a plea, he is "deprived of rights essential to a fair hearing under the Federal Constitution." *De Meerleer* v. *Michigan, supra,* at 665.

We reject such a claim. Most incarcerations are upon pleas of guilty, and probably most such pleas have been made without the felt need of counsel. It is not for us to suggest that it might be desirable to offer to every accused who desires to plead guilty the opportunities for counsel and to enter with formality upon the record the deliberate disclaimer of his need for counsel because

of a full appreciation of the meaning of a plea of guilty as expounded by responsible judges. Our duty does not go beyond safeguarding "rights essential to a fair hearing" by the States. After all, due process, "itself a historical product," *Jackman* v. *Rosenbaum Co.*, 260 U. S. 22, 31, is not to be turned into a destructive dogma in the administration of systems of criminal justice under which the States have lived not only before the Fourteenth Amendment but for the eighty years since its adoption. It does not militate against respect for the deeply rooted systems of criminal justice in the States that such an abrupt innovation as recognition of the constitutional claim here made implies, would furnish opportunities hitherto uncontemplated for opening wide the prison doors of the land.

Insofar as the sentences in this case are attacked on claims which were not open for consideration on the common-law record which alone was before the Illinois court, see 394 Ill. 194, 68 N. E. 2d 252, they are not open here. *Carter* v. *Illinois,* 329 U. S. 173. They must be raised by whatever procedure Illinois may provide, or, in default of relief by appropriate Illinois proceedings, by a new claim of denial of due process for want of such relief. See *Mooney* v. *Holohan,* 294 U. S. 103.

*Affirmed.*

Mr. Justice Black, with whom Mr. Justice Douglas, Mr. Justice Murphy and Mr. Justice Rutledge join, dissenting.

In *Adamson* v. *California,* this day decided, *ante* p. 46, the Court waters down the Fourteenth Amendment's application to the states of the Bill of Rights guarantee against self-incrimination so as to make it compatible with the Court's standards of decency and a fair trial. In this case the Court similarly waters down the Bill of

Rights guarantee of counsel in criminal cases. In both cases, the Court refuses to strike down convictions obtained in disregard of Bill of Rights guarantees, assuming all the while that identical convictions obtained in federal courts would violate the Bill of Rights. For the Court, in the instant case, concedes that, by virtue of the Sixth Amendment, "counsel must be furnished an indigent defendant prosecuted in a federal court in every case, whatever the circumstances." This, of course, relates to con-victions following both pleas of not guilty and pleas of guilty. *Williams* v. *Kaiser,* 323 U. S. 471; *Tomkins* v. *Missouri,* 323 U. S. 485.

In the *Adamson* case, I have voiced my objections to dilution of constitutional protections against self-incrimination in state courts. This decision is another example of the consequences which can be produced by substitution of this Court's day-to-day opinion of what kind of trial is fair and decent for the kind of trial which the Bill of Rights guarantees. This time it is the right of counsel. We cannot know what Bill of Rights provision will next be attenuated by the Court. We can at least be sure that there will be more, so long as the Court adheres to the doctrine of this and the *Adamson* case.

The Court's decision relies heavily on *Betts* v. *Brady,* 316 U. S. 455. In that case, a man on relief, too poor to hire a lawyer, and whose request for the appointment of a lawyer was denied, was compelled to act as his own lawyer on a charge of robbery. Conviction followed. That case is precedent for this one. But it is the kind of precedent that I had hoped this Court would not perpetuate.

One thing more. The Court seems to fear that protecting these defendants' right to counsel to the full extent defined in the Bill of Rights would furnish "opportunities hitherto uncontemplated for opening wide the prison doors of the land," because, presumably, there are many

people like Betts, Foster and Payne behind those doors after trials without having had the benefit of counsel. I do not believe that such a reason is even relevant to a determination that we should decline to enforce the Bill of Rights.

MR. JUSTICE RUTLEDGE, with whom MR. JUSTICE BLACK, MR. JUSTICE DOUGLAS, and MR. JUSTICE MURPHY concur, dissenting.

I think the Sixth Amendment's guaranty of the right to counsel in criminal causes is applicable to such proceedings as this in state courts.

Apart from that view and upon the Court's basis that the Fourteenth Amendment by its own force independently prescribes a partial similar guaranty, cf. *Palko* v. *Connecticut*, 302 U. S. 319, 327; *Betts* v. *Brady*, 316 U. S. 455; *Powell* v. *Alabama*, 287 U. S. 45, I am unable to accept its conclusion in this case. Of course if the so-called presumption of regularity is to be effective to sustain the denial of counsel in circumstances as bald as those presented in *Gayes* v. *New York*, 332 U. S. 145, decided today, that presumption must work the same denial in the somewhat less startling facts of this case.

But when a record discloses as much as the record here shows, I do not think any presumption of regularity should be permitted to overcome the substance of the violated constitutional right. Such a presumption indeed, if valid by mere force of the fact that a judgment has been rendered, may always be indulged. Cf. *Williams* v. *Kaiser*, 323 U. S. 471; *Tomkins* v. *Missouri*, 323 U. S. 485; *De Meerleer* v. *Michigan*, 329 U. S. 663. And the consequences of such a course of action here, for the observance and preservation of constitutional rights, more especially of the indigent and ignorant who are unable to employ counsel from their own resources and do

142

not know their rights, must be, not merely a denial of the basic right of counsel, but also a denial of the equal protection of the laws in sweeping application. Poverty or wealth will make all the difference in securing the substance or only the shadow of constitutional protections.

Here petitioners were charged with the serious crimes of burglary and larceny, handed a copy of the indictment, and arraigned. Every lawyer knows the difficulties of pleading to such charges, including the technicalities of the applicable statutes and especially of the practice relating to included or lesser offenses. The crimes charged involved penalties of imprisonment for from one year to life, the penalty actually imposed upon these petitioners.

On the very day the indictment was handed down, petitioners were arraigned, their pleas of guilty were accepted, and they were sentenced. At no time were they offered counsel or advised of their right to counsel, nor did they receive any assistance from counsel. The record, it is true, recites that they were "advised of their rights of Trial and of the consequences of an entry of a plea of guilty," notwithstanding which each said that he was guilty, whereupon the court "advises and admonishes each of said defendants of the consequences of entering such pleas of guilty," despite which each persisted in his plea.

However this vague and formal recital might be taken in other circumstances, it cannot be regarded in this case as meaning that petitioners were either offered counsel or informed of any right to counsel. Indeed the recital must be taken as having deliberately avoided including statements in either respect. And, upon the record as a whole, we are required not only to read it in this light but to conclude that the recital and the intentional omission of statements concerning the right to counsel were effective to establish that the petitioners were in fact denied that right.

The Court does not point out, but it is the very heart of this case, that under Illinois law these petitioners were, in effect, denied the right to have counsel tendered or appointed by the court. It was under no duty imposed by state law to tender counsel, to inquire into the need for counsel, or to inform the defendants of any right to counsel. Indeed, under the law of the state, it seems, the court would have exceeded its powers by taking action in any of these respects.

We are not only entitled, we are required, to read the record of the state's proceedings in the light of the state's law applicable to them. In Illinois by statute it is only in capital cases that the court is under an affirmative duty, when it appears that a defendant is indigent, to tender appointment of counsel.[1] In noncapital cases the following statute applies:

> ". . . Every person charged with crime shall be allowed counsel, and when he shall state upon oath that he is unable to procure counsel, the court shall assign him competent counsel, who shall conduct his defense." Ill. Rev. Stat. (1945) c. 38, § 730.

The Illinois Supreme Court consistently has construed this statute as requiring appointment of counsel only when a defendant requests counsel and states on oath that he cannot procure counsel. It is expressly held that the provision "does not place upon the court the duty to proffer the services of counsel . . .," *People* v. *Lavendowski,* 326 Ill. 173, 176, nor does it require advising defendants of their right to counsel. *People* v. *Corrie,* 387 Ill. 587, 589–590. See also *People* v. *Corbett,* 387 Ill.

---

[1] "Whenever it shall appear to the court that a defendant or defendants indicted in a capital case, is or are indigent and unable to pay counsel for his or her defense, it shall be the duty of the court to appoint one or more competent counsel for said defendant or defendants, who shall receive a reasonable sum for services . . . ." Ill. Rev. Stat. (1945) c. 38, § 730.

144

41; *People* v. *Childers,* 386 Ill. 312; *People* v. *Fuhs,* 390 Ill. 67. And the failure of the defendant to state his need and inability to procure counsel under oath is taken apparently as a waiver of the right. Cf. *People* v. *Stubblefield,* 391 Ill. 609, 610.[2]

Finally, the opinion of the Illinois court in this case shows that petitioners were denied relief on the basis of these rules.[3]

In the light of the Illinois statutes and decisions, therefore, the present record can be taken to sustain no presumption that the trial court offered counsel to petitioners, inquired concerning their need for counsel or ability to secure such aid, or advised them in any way of their right to have that assistance. The only tenable presumption is that the court refrained deliberately, in accordance with the state law, from taking action in any of these respects.

Moreover, when men appear in court for trial or plea, obviously without counsel or so far as appears the means of securing such aid, under serious charges such as were made here involving penalties of the character imposed, it is altogether inconsistent with their federal constitutional right for the court to shut its eyes to their apparently helpless condition without so much as an inquiry concerning its cause. A system so callous of the rights of men, not only in their personal freedom but in their rights to trial comporting with any conception of fairness, as to tolerate such action, is in my opinion wholly contrary

[2] And see note 3.

[3] "It is first contended by plaintiffs in error that they did not have counsel appointed to represent and protect their rights. It is not shown by the record that the defendants informed the court or in any way indicated that they desired counsel. We have repeatedly held that the right to be represented by counsel is a personal right which a defendant may waive or claim as he himself may determine. (*People* v. *Fuhs,* 390 Ill. 67.) This contention is without merit." 394 Ill. 194, 195.

to the scheme of things the nation's charter establishes. Courts and judges, under that plan, owe something more than the negative duty to sit silent and blind while men go on their way to prison, for all that appears, for want of any hint of their rights.

Adding to this blindness a "presumption of regularity" to sustain what has thus been done makes a mockery of judicial proceedings in any sense of the administration of justice and a snare and a delusion of constitutional rights for all unable to pay the cost of securing their observance.