**COOPER et al. v. HUTCHINSON.**
Civ. No. 1036–49.

United States District Court
D. New Jersey.
Jan. 27, 1950.

Solomon Golat, Newark, N. J. (O. John Rogge, New York City, William L. Patterson, Emanuel H. Bloch, Robert H. Goldman, Murray A. Gordon, Jerome J. Bornstein, New York City, of counsel), for plaintiff.

Theodore D. Parsons, Attorney General of the state of New Jersey, John W. Griggs, Deputy Attorney General, for defendant.

Morton Stavis, New York City, for Electrical, Radio and Machine Workers of America, District Council No. 4, amicus curiae.

Witt & Cammer, New York City (Ralph Shapiro, New York City, of counsel), for Fur, Dresses and Dyers Local 140 and others, amicus curiae.

Samuel M. Sacher, New York City, for Greater New York Regional Council and others, amicus curiae.

Neuburger, Shapiro, Rabinowitz & Boudin, New York City (Leonard B. Boudin, New York City, of counsel), for Local 19, Social Service Employees Union of the United Office and Professional Workers of America, amicus curiae.

William Rossmore, Newark, N. J., for Locals 7, 11 and 15 of the United Office and Professional Workers of America, amicus curiae.

Robert K. Bell, Ocean City, for New Jersey State Bar Ass'n, amicus curiae.

George Gildea, Trenton, N. J., for the Mercer County Bar Ass'n, amicus curiae.

FORMAN, District Judge.

From the complaint in this case it appears that the plaintiffs Ralph Cooper, Collis English and James H. Thorpe, with three others, were convicted on a charge of murder in the Mercer County Court of the State of New Jersey on August 6, 1948. The sentence of death was imposed upon them by the defendant, Honorable Charles P. Hutchinson, Judge of the said court. They were represented in their trial by court appointed counsel.

During the preparation of the appeal from the plaintiffs' conviction, Messrs. Solomon Golat and Clarence Talisman of the bar of the State of New Jersey and Messrs. O John Rogge, William L. Patterson and Emanuel H. Bloch, counsel in good standing in bars other than the State of New Jersey, were chosen by the plaintiffs as their counsel in substitution for counsel appointed by the trial court and Mr. Rogge was admitted to argue their appeal pro hac vice. The conviction of all of the defendants in the murder case was reversed and a new trial ordered in an opinion of the New Jersey Supreme Court filed June 30, 1949. See State v. Cooper, 2 N.J. 540, 67 A. 2d 298. In the following month Mr. Golat moved the admission of Messrs. Rogge, Patterson and Bloch pro hac vice before Judge Hutchinson in the Mercer County

Court for the retrial of the case and he granted the motion.

The said counsel appeared before him on a number of occasions to argue various motions. On December 16, 1949, following the disposition of a motion brought on by said counsel the defendant, according to the allegations of the plaintiffs, dismissed Messrs. Rogge, Patterson and Bloch as counsel for the plaintiffs.

Since the plaintiffs desire to be represented in their retrial by the said counsel, and no others, they submit that the dismissal by the defendant of the said counsel under color of law was summary, arbitrary, capricious and unreasonable, and deprives them of their right to be represented by counsel of their choice as guaranteed to them under the due process clause of the Fourteenth Amendment to the Constitution of the United States.[1] Therefore they invoked the provisions of the Civil Rights Act of the United States, 8 U.S.C.A. § 43[2] and 28 U.S.C.A. § 1343[3] and prayed for the following equitable relief:

"1. That this Court temporarily and permanently enjoin the defendant Charles P. Hutchinson during the course of further criminal proceedings taken against the plaintiffs by the State of New Jersey in the case of State v. Cooper, et al., from refusing to recognize O. John Rogge, William L. Patterson and Emanuel H. Bloch as counsel for the plaintiffs and from appointing other counsel in their stead, without the consent of the plaintiffs.

"2. That this Court temporarily and permanently enjoin the defendant Charles P. Hutchinson from commencing the trial of State v. Cooper, et al., until plaintiffs are permitted to have counsel of their own choice for their defense.

"3. For such other and further relief as this Court may deem proper."

The matter is presently before this court on a notice of motion given to the defendant by the plaintiffs that they would apply for an order restraining the defendant from refusing to recognize Messrs. Rogge, Patterson, Bloch and Golat as defense counsel and from appointing other counsel in their stead without their consent and for an order restraining the defendant from commencing the trial until they are permitted to select counsel of their own choice for their defense.

The defendant has countered with a motion to dismiss the cause because:

(1) this court lacks jurisdiction of the subject matter of the litigation;

---

1. "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." United States Constitution, Amendment XIV, Section 1.

2. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

3. "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

(1) To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 47 of Title 8;

(2) To recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 47 of Title 8 which he had knowledge were about to occur and power to prevent;

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

(2) the complaint fails to state facts showing that this court has jurisdiction of this action or jurisdiction that the court will exercise;

(3) the complaint fails to state a claim upon which the relief prayed for can be granted; and

(4) the complaint fails to state a claim against the defendant upon which relief can be granted.

Argument on the motions has been made by counsel of the parties as well as by counsel representing a committee of the Mercer County Bar Association, all of whom submitted briefs, the latter as amicus curiae. The defendant requested that arguments raised in the brief of the Bar Association in support of his motion should be considered as his arguments. Other briefs of amici curiae were permitted to be filed as noted at the head of this opinion.

It is the contention of the plaintiffs that their right to counsel is guaranteed to them under the Sixth Amendment to the Constitution of the United States,[4] and that it has been interpreted by the courts to intend that persons accused of crime shall achieve effective representation, to include the right to choose counsel, referring among others, to the case of Powell v. Alabama, 287 U.S. 45, 53, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527. They also contended that any lessor construction deprives them of the fundamental fairness that should characterize a criminal trial, lack of which is violative of the Fifth and Fourteenth Amendments to the United States Constitution. Therefore, their first point is that they were deprived of their constitutional right to counsel of their choice by the action of the defendant when he dismissed their counsel. They contended that the fact that their counsel were not members of the

bar of the court in which they were being tried did not detract from their right to avail themselves of their services, for they argued that in the case of U. S. v. Bergamo, 3 Cir., 154 F.2d 31, the Court of Appeals of this Circuit specifically held that the constitutional guarantees were such as to make it mandatory upon the trial court to admit as counsel of the choice of an accused, a lawyer from another state.

The plaintiffs also urged that this court has jurisdiction to afford them the relief they seek against the defendant under the Civil Rights Act, 8 U.S.C.A. § 43, and 28 U.S.C.A. § 1343. They argued that it is established that an official acts under color of a statute where the power he is alleged to have misused is that which he possessed by virtue of the state law and his exercise of it is made possible only because he is clothed with the authority of the state law; that deprivations so occasioned extend the cause of action provided under the Civil Rights Act to include the right to sue state judges when their actions contravene it and cited a number of cases to support this proposal, including Picking v. Pennsylvania R. Company, 3 Cir., 151 F.2d 240, 250. They also submitted that it has been held that it is not essential to exhaust state court remedies before resorting to action under the Civil Rights Act and that the statute under which a court of the United States is ordinarily prohibited from granting an injunction to stay proceedings in a state court, 28 U.S.C.A. § 2283 [5] is not operative here because the Civil Rights Act falls within its exception in its express authorization. Moreover, the plaintiffs contend the relief they seek here is not to stay the state court proceedings but merely to have this court order that the lawyers of their choice should be recognized by the state court, as otherwise they will have suffered

---

**4.** "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have

compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense."

**5.** "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

irreparable injury, prejudice and deprivation of their constitutional rights.

The plaintiffs and the various parties who support their position in a brief as amici curiae stress the public importance and deleterious effect of a decision that would sustain the principle that a defendant in a criminal case could not be represented by counsel of his choice in the person of a lawyer or lawyers of bars other than that of the forum in which he was being tried.

In the argument and brief of the defendant (which will be considered to comprehend the arguments advanced by the committee of the Mercer County Bar Association pursuant to his request), he contended that he is bound by Rule 1:8–10(b)[6] of the Supreme Court of New Jersey, which in turn derives its power to regulate the practice and procedure of the courts of the State from Article VI, Section II, Paragraph 3 of the New Jersey Constitution of 1947, N.J.S.A.[7] Under it he claimed discretion was reposed in him which he exercised by removing three of plaintiffs' lawyers by declaring that they no longer had a right to appear in the case. The defendant submitted that if he abused his discretion in this respect, or if the Rule of the Supreme Court of New Jersey is in conflict with rights guaranteed under the United States Constitution the test is by way of appeal through the State Court system and thence to the United States Supreme Court, provision existing in the New Jersey Superior Court Rules for appeals whether final or interlocutory, Rules Governing the Courts of the State of New Jersey, Interlocutory Appeals, 4:2–2(d).[8] Therefore he argued that the complaint should be dismissed on the ground that the proper forum is in the Appellate Division of the Superior Court of New Jersey.

The defendant conceded that the Sixth Amendment of the United States Constitution assures the right of an accused to have counsel to assist him in his defense, but he submitted that it does not of itself guarantee counsel of the choice of the accused; that while the United States Supreme Court has held that the guarantee under the Fourteenth Amendment of the United States Constitution contemplated that "due process" meant effective assistance of counsel including elements such as the right of the defendant to choose his own counsel or have the court appoint an attorney for him, adequate opportunity to consult counsel in advance of trial and for the uncompromised effort of counsel at all stages of the proceedings, no case has held that the right of an accused to select any one as his counsel in a state court prosecution, is so fundamentally "within the concept of 'due process'", that a state court is thereby deprived of the rule making authority that it always possessed. The defendant challenged the application made by the plaintiffs of the decision of the Court of Appeals of this Circuit in the case of U. S. v. Bergamo, supra, to the case at bar, for the reason that it was a prosecution of a federal offense in a federal court with implications of the Sixth Amendment of the United States Constitution and the construction of Federal Court Rules requiring direct application, whereas here the plaintiffs are charged with a violation of a state statute in a criminal prosecution in a court of the State of New Jersey and that state courts have the right and the duty to pass upon their own rules,

6. "Any attorney or counsellor from any other of the United States, of good standing there, may, at the discretion of the court in which any cause is pending, be admitted, pro hac vice to speak in such cause in the same manner as an attorney or counsellor of this State."

7. "The Supreme Court shall make rules governing the administration of all courts in the State and, subject to the law, the practice and procedure in all such courts. The Supreme Court shall have jurisdiction over the admission to the practice of law and the discipline of persons admitted."

8. "Appeals may be taken to this court from orders or judgments, whether or not interlocutory:

  *    *    *    *    *    *    *

"(d) When necessary to preserve and maintain the res or status quo pending final judgment and prevent irreparable injury or mischief."

reserving to the United States Supreme Court on direct appeal thereto, the jurisdiction to correct constitutional infirmities if they appear. The defendant urged that interference by a federal court here would disturb orderly process of state administration of its own law and would subject to review by federal courts every step in the proceedings in the state court from "inception to conclusion".

The defendant also submitted that the equity jurisdiction of a federal court should not be exercised to enjoin criminal proceedings in a state court on familiar general principles recognized by federal statute, 28 U.S.C.A. § 2283, which the defendant claimed limits federal jurisdiction unless exceptional circumstances are shown, the like of which are not present in this case. The defendant urged that the plaintiffs have been deprived of no counsel who is qualified to practice before the courts of this state and that there can be no deprivation of due process until such time as the case is actually moved for trial. For these reasons the defendant submitted that the plaintiffs have shown no danger of irreparable loss or injury which would warrant the exercise by this federal court of the power of injunction over the processes of the criminal courts of the state.

The Sixth Amendment to the United States Constitution specifically provides for the right of an accused to have counsel to aid him in his defense. It does not of itself authorize a counsel of choice and as with other provisions of the Bill of Rights has no enforced application in the states except as it may come into conflict with such rights as are implicit in the concept of ordered liberty. Adamson v. California, 332 U.S. 46, 67 S.Ct. 1672, 91 L.Ed. 1903, 171 A.L.R. 1223. It has been stated by the United States Supreme Court in Foster v. Illinois, 332 U.S. 134, 67 S.Ct. 1716, 91 L.Ed. 1955 that: "The 'due process of law' which the Fourteenth Amendment exacts from the States is a conception of fundamental justice. See Hebert v. Louisiana, 272 U.S. 312, 316, 47 S.Ct. 103, 104, 71 L.Ed. 270, 48 A.L.R. 1102; Palko v. Connecticut, 302 U.S. 319, 325, 58 S.Ct. 149, 151, 152, 82 L.Ed. 288. It

is not satisfied by merely formal procedural correctness, nor is it confined by any absolute rule such as that which the Sixth Amendment contains in securing to an accused 'the Assistance of Counsel for his defence.' By virtue of that provision, counsel must be furnished to an indigent defendant prosecuted in a federal court in every case, whatever the circumstances. See Palko v. Connecticut, supra, 302 U.S. at page 327, 58 S.Ct. at page 152, 82 L.Ed. 288; Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357; Betts v. Brady, 316 U.S. 455, 464–465, 62 S.Ct. 1252, 1257, 86 L.Ed. 1595. Prosecutions in State courts are not subject to this fixed requirement. So we have held upon fullest consideration. Betts v. Brady, supra. But process of law in order to be 'due' does require that a State give a defendant ample opportunity to meet an accusation. And so, in the circumstances of a 'particular situation,' assignment of counsel may be 'essential to the substance of a hearing' as part of the due process which the Fourteenth Amendment exacts from a State which imposes sentence. Palko v. Connecticut, supra, 302 U.S. at page 327, 58 S.Ct. at page 152, 82 L.Ed. 288. Such need may exist whether an accused contests a charge against him or pleads guilty." 332 U.S. at pages 136–137, 67 S.Ct. at page 1717.

See also Gibbs v. Burke, 337 U.S. 773, 69 S.Ct. 1247; Uveges v. Pennsylvania, 335 U.S. 437, 69 S.Ct. 184.

In capital cases, however, the right to counsel in state courts is absolute and must be supplied the accused whether demanded or not. Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527; Tomkins v. Missouri, 323 U.S. 485, 65 S.Ct. 370, 89 L.Ed. 407. Cf. Hawk v. Olson, 326 U.S. 271, 66 S.Ct. 116, 90 L.Ed. 61. If the accused so desires, he must be given a reasonable time to secure counsel of his choice and a court may not arbitrarily refuse to hear counsel engaged by him. Powell v. Alabama, supra.

The allegations of the complaint that the plaintiffs stand to be deprived of their chosen counsel in a capital case amount to assertions of a denial of their

fundamental rights under the Federal Constitution to which they are entitled in state and federal tribunals. They are sufficiently stated to compel the court to take jurisdiction at least to determine whether these allegations constitute a cause of action on which the court can grant the relief under the provisions of the Civil Rights Act and 28 U.S.C.A. § 1343(3). The situation is similar to that in the case of Bell v. Hood, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939, wherein the United States Supreme Court expressed itself as follows: "Jurisdiction, therefore, is not defeated as respondents seem to contend, by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy. If the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction."

See also Westminster School District of Orange County v. Mendez, 9 Cir., 161 F.2d 774, 778–779.

The question raised by these motions is as simple as this: Is it intended by the Civil Rights Act that an allegation of an infringement of Federal Constitutional rights by a state court judge during criminal proceedings pending before him shall give rise to an action in a federal court that will permit it to intrude its injunctive hand into the state court proceedings and bring them to a halt?

■ The doctrine that ordinarily the injunctive power of equity will not be utilized to enjoin a law court is ancient law and in the circumstances of our existence under the duality of federal and state sovereignties it becomes increasingly of great importance that the processes of the state courts may not be rendered nugatory and chaotic by interference from the federal courts. Congress has crystallized this doctrine in its enactment prohibiting the federal courts from enjoining state court actions in 28 U.S.C.A. § 2283.

The plaintiffs, however, argued that they come within the exceptions provided in § 2283 on the theory that the Civil Rights Act, 8 U.S.C.A. § 43 and 28 U.S.C.A. § 1343(3) grant the necessary authority to the federal court in this case to activate its equity power to enjoin the state court proceeding pending against them. In this connection they submitted that they ask for no injunction against the court itself but that any relief they seek is merely to restrain the judge of the court from proceeding with the case until such time as he has restored their lawyers to the bar of the court in their case. Now this is not a realistic argument, for obviously the court cannot function without a judge, and if he is not to act until he complies with the order demanded by the plaintiffs the action in the court cannot proceed. Its practical effect is to restrain the court.

The plaintiffs assert that strong support for their theory is found in the case of U. S. v. Bergamo, supra. But in that case, the Court of Appeals dealt with a situation where counsel, chosen by the defendants in a federal criminal prosecution, was denied any right to appear in the trial in representation of his clients from the very beginning and a continuance was refused the defendants by the trial court to secure new counsel. The analogy to this case soon evaporates when it is realized that here the criminal action against the plaintiffs is pending in a state court where certain of plaintiffs' counsel were not refused admission, but, on the contrary, were specifically admitted pro hac vice and functioned until they were removed by the state court.

■ The plaintiffs also took comfort in the case of Picking v. Pennsylvania R. Co., supra, as a precedent to show that a state judge could be held liable under the Civil Rights Act. It is indeed good authority for the proposition that state judicial officers are amenable to the provisions of the Civil Rights Act. See Shelley v. Kraemer, 334 U.S. 1, 14–18, 68 S.Ct. 836, 92 L.Ed. 1161,

3 A.L.R.2d 441. However, it must be remembered that in the Picking case the judge had concluded his action against the plaintiffs and there was no attempt to invoke injunctive process against his court while any action was pending involving the plaintiff therein.

■ Contrary to the plaintiffs' argument is the case of Douglas et al. v. City of Jeannette et al., 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324. The complaint therein was based on the allegations that the defendants threatened to continue to enforce a constitutionally invalid city ordinance by arrests and prosecutions and it was further alleged to arise under the Constitutional Laws of the United States, including the Civil Rights Act. In it the United States Supreme Court made the following cogent comment:

"Notwithstanding the authority of the district court, as a federal court, to hear and dispose of the case, petitioners are entitled to the relief prayed only if they establish a cause of action in equity. Want of equity jurisdiction, while not going to the power of the court to decide the cause, * * * may nevertheless, in the discretion of the court, be objected to on its own motion. * * * Especially should it do so where its powers are invoked to interfere by injunction with threatened criminal prosecutions in a state court.

"The power reserved to the states under the Constitution to provide for the determination of controversies in their courts may be restricted by federal district courts only in obedience to Congressional legislation in conformity to the Judiciary Articles of the Constitution. Congress, by its legislation, has adopted the policy, with certain well defined statutory exceptions, of leaving generally to the state courts the trial of criminal cases arising under state laws, subject to review by this Court of any federal questions involved. Hence, courts of equity in the exercise of their discretionary powers should conform to this policy by refusing to interfere with or embarrass threatened proceedings in state courts save in those exceptional cases which call for the interposition of a court of equity to prevent irreparable injury which is clear and imminent; and equitable remedies infringing this independence of the states—though they might otherwise be given—should be withheld if sought on slight or inconsequential grounds. * *

"It is a familiar rule that courts of equity do not ordinarily, restrain criminal prosecutions. No person is immune from prosecution in good faith for his alleged criminal acts. Its imminence, even though alleged to be in violation of constitutional guaranties, is not a ground for equity relief since the lawfulness or constitutionality of the statute or ordinance on which the prosecution is based may be determined as readily in the criminal case as in a suit for an injunction. * * * Where the threatened prosecution is by state officers for alleged violations of a state law, the state courts are the final arbiters of its meaning and application, subject only to review by this Court on federal grounds appropriately asserted. Hence the arrest by the federal courts of the processes of the criminal law within the states, and the determination of questions of criminal liability under state law by a federal court of equity, are to be supported only on a showing of danger of irreparable injury 'both great and immediate.' * * *

*　*　*　*　*　*

"It does not appear from the record that petitioners have been threatened with any injury other than that incidental to every criminal proceeding brought lawfully and in good faith, or that a federal court of equity by withdrawing the determination of guilty from the state courts could rightly afford petitioners any protection which they could not secure by prompt trial and appeal pursued to this Court. * * *" 319 U.S. at page 162–164, 63 S.Ct. at page 880.

■ The doctrine of abstention has been similarly applied where there has been an allegation that a state statute is in conflict with the United States Constitution or that a state officer is about to administer, or is administering, a state statute in an unconstitutional manner. Alabama State Federation of Labor v. McAdory, 325 U.S. 450, 65 S.Ct. 1384, 89 L.Ed. 1725; C. I. O. v. McAdory, 325 U.S. 472, 65 S.Ct. 1395, 89

L.Ed. 1741; A. F. of L. v. Watson, 327 U. S. 582, 66 S.Ct. 761, 90 L.Ed. 873; Traffic Telephone Workers' Federation of N. J. v. Driscoll, D.C., 72 F.Supp. 499, appeal dismissed 332 U.S. 833, 68 S.Ct. 221, 92 L.Ed. 406. Cf. Hill v. Florida, 325 U.S. 538, 65 S. Ct. 1373, 89 L.Ed. 1782. The reasoning in these cases has been based upon the premise that the highest court of the state should be permitted first to limit or pass upon the merits of the alleged unconstitutionality with recourse to the United States Supreme Court if the proper federal grounds are presented. Cf. Society of Good Neighbors v. Groat, D.C., 77 F.Supp. 695.

An indication that this doctrine of abstention is looked upon with favor appears in the procedure governing the application to a federal court for a writ of habeas corpus by one detained in the custody of a state. It has been held by the United States Supreme Court that state court remedies must be exhausted before a federal court may issue the writ. Ex parte Hawk, 321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572. This has been codified as a statute, 28 U.S. C.A. § 2254.

■■■ It is true, as argued by the plaintiffs, that it is not ordinarily necessary to exhaust state remedies prior to seeking redress under the Civil Rights Act and Lane v. Wilson, 307 U.S. 268, 59 S.Ct. 872, 83 L. Ed. 1281 is, as they state, an instance where this position was established by the United States Supreme Court. However, that was a case where state voting officials denied a citizen the right of registration and no pending court action was involved. The distinction is made apparent in Douglas v. City of Jeannette, supra, where the protection of the Civil Rights Act was sought to be invoked but was denied in the light of pending criminal prosecution where the alleged constitutional invalidity could be tested.

If the plaintiffs' theory of the federal district court's injunctive power pursuant to 28 U.S.C.A. § 1343(3) were followed, fantastic results would occur, for in every state court criminal action in which the defendant raised a defense alleging deprivation of a constitutionally protected right he could institute an action that would convert a federal district court into a review forum of state court action. Cf. Lindsey v. Allen, D.C., 269 F. 656, 659, appeal dismissed 258 U.S. 613, 42 S.Ct. 462, 66 L.Ed. 791.

■■■ For instance, state court criminal prosecutions, wherein it is alleged that coerced confessions were obtained, could be interrupted while the defendants sought to test their admissibility in federal district court actions. Interminable delays would follow with consequent confusion. That the interference would not be tolerated is apparent from the recent case of Watts v. Indiana, 338 U.S. 49, 69 S.Ct. 1347. In it the Court makes the following significant reference in considering such a confession: "Thus, while the State courts have the responsibility for securing the rudimentary requirements of a civilized order, in discharging that responsibility there hangs over them the reviewing power of *this* Court." 338 U.S. at page 50, 69 S.Ct. at page 1348. [Emphasis supplied.]

Cited to the text, there appears this interesting note: "Of course this Court does not have the corrective power over State courts that it has over the lower federal courts. See, e. g., McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819. In the main, the proper administration of the criminal law of the States rests with the State courts. The nature of the Due Process Clause, however, potentially gives wide range to the reviewing power of *this* Court over State-court convictions." [Emphasis supplied.]

■■■ Certain prerogatives are inherent in all courts that the orderly administration of justice may be maintained. To this end, it cannot be doubted that the states are empowered to promulgate rules governing those who are desirous of being admitted to the practice of law and controlling the procedure in courts after they are admitted. Ex parte Garland, 4 Wall. 333, 18 L.Ed. 366; Bradley v. Fisher, 13 Wall. 335, 20 L.Ed. 646; Bradwell v. Illinois, 16 Wall. 130, 21 L.Ed. 442; In re Lockwood, 154 U.S. 116, 14 S.Ct. 1082, 38 L.Ed. 929; In re Watts & Sachs, 190 U.S. 1, 23 S.Ct. 718, 47 L.Ed. 933; Yeiser v. Dysart, 267 U.S. 540, 45 S.Ct. 399, 69 L.

784

Ed. 775; In re Summers, 325 U.S. 561, 65 S.Ct. 1307, 89 L.Ed. 1795; Fisher v. Pace, 336 U.S. 155, 69 S.Ct. 425; Emmons v. Smitt, 6 Cir., 149 F.2d 869; In re Chopak, 2 Cir., 160 F.2d 886; In re Patterson, 9 Cir., 176 F.2d 966 and cases cited in footnote. It is in the exercise of this prerogative that a court may resort to the removal of counsel for cause and to this extent the uninhibited choice of counsel by an accused may become limited in the interest of the survival of an orderly administration of justice. The decision as to whether or not counsel were justifiably removed by the defendant, the plaintiffs now would project into this court. It is beyond its power to make such a decision. Federal district courts are courts of limited jurisdiction and Congress never granted them authority to serve as an appellate or review court for alleged unconstitutional actions, for this power is severely restricted to the United States Supreme Court. See 28 U.S.C.A. § 1257. Cf. Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362; In re Edmonds, 77 F2d 765, 22 C.C.P.A., Patents, 1256; U. S. ex rel. Parker v. Carey, 7 Cir., 135 F. 2d 205; Emmons v. Smitt, D.C., 58 F.Supp. 869, affirmed, 6 Cir., 149 F.2d 869, certiorari denied, 326 U.S. 746, 66 S.Ct. 59, 90 L. Ed. 446.

■ There is no charge that plaintiffs have been completely deprived of counsel for the very complaint itself in this court is brought on their behalf by local counsel whose representation of the plaintiffs has not been terminated by the defendant. However, there is no suggestion that the court will refuse to recognize any other counsel the plaintiffs may choose, appoint counsel for them if they so desire, or give them reasonable adjournment in which to choose other counsel or otherwise prepare for the trial. The only deprivation to which the plaintiffs allege that they have been exposed by the defendant is that certain of plaintiffs' counsel have been removed. This cannot be said to be irreparable and irremediable injury, particularly in the light of plaintiffs' plain remedies in the pending action in which they are now engaged in the state court.

And so here, our simple question, initially raised, induces this simple answer. The Civil Rights Act does not, under the allegations of the plaintiffs' complaint, authorize this court to order the defendant, the judge of the Mercer County Court, to reinstate certain of their lawyers in their pending criminal case and to stop the trial until he does so. If he has erred in displacing those lawyers, his action is subject to review for the purpose of correcting the mistake, if any, first by the appellate courts of New Jersey and finally in the United States Supreme Court.

Accordingly, although this court has taken jurisdiction of the complaint for the purpose of ascertaining whether it pleaded a cause of action upon which relief may be granted, it is found that it has no power to grant the relief upon the allegations presented in the complaint.

The motion for a temporary injunction will be denied and the motion to dismiss the complaint will be granted.

An order should be submitted in conformity with this opinion.