## PEOPLE v. HENDERSON.

1. RAPE—RECORD—NEW TRIAL.
   Record *held,* to leave no room for doubt that defendant was guilty of crime of rape to which he had pleaded guilty and now seeks new trial some 10 years later.

2. CRIMINAL LAW—PLEA OF GUILTY—BELATED CLAIM OF COERCION.
   Claim of defendant, first made some 10 years after he had pleaded guilty to crime of rape, that such plea was induced by coercion and fear *held,* not supported under record presented, where he was 25 years of age at time crime was committed, was experienced in criminal prosecutions and when advised the crime carried a life sentence stated he did not want to change his plea because he knew he was guilty.

3. SAME—RAPE—PLEA OF GUILTY—SPEEDY TRIAL—NEW TRIAL.
   The mere fact that defendant, then 25 years of age and experienced in criminal prosecutions, was arrested, charged with rape, waived examination, was arraigned, pleaded guilty and sentenced all in 1 day, less than a week after the crime was claimed to have been committed does not establish that justice requires he be given a new trial.

4. SAME—PLEA OF GUILTY—TRIAL.
   One who pleads guilty to the commission of a crime is not entitled under the Constitution to a trial to determine his guilt unless his plea of guilty is refused by the court or is first set aside.

Appeal from Macomb; Spier (James E.), J. Submitted May 20, 1955. (Docket No. 68, Calendar No. 46,251.) Decided October 3, 1955. Rehearing denied December 1, 1955.

REFERENCES FOR POINTS IN HEADNOTES

[2, 3] 14 Am Jur, Criminal Law §§ 287, 288.5 (Supp).
[2, 3] Withdrawal of plea of guilty and substitution of plea of not guilty after conviction. 146 ALR 1430.
[4] 14 Am Jur, Criminal Law §§ 269-272.

James Henderson filed his motion for new trial 10 years after his plea of guilty to rape and after a similar earlier motion had been denied. After unfavorable determination and denial of application for leave to appeal, attorney general asked Supreme Court to review proceedings after taking additional testimony in respect thereto. Motion for new trial denied. Defendant appeals. Affirmed.

*Thomas M. Kavanagh,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Ernest O. Zirkalos,* Assistant Attorney General, and *Wendell L. Lichtenfelt,* Special Assistant Prosecuting Attorney, for plaintiff.

*Ernest Goodman,* for defendant.

BOYLES, J. On leave granted the defendant appeals from an order entered in the circuit court for Macomb county denying his motion for a new trial, after he had pleaded guilty and received a life sentence to State prison in 1942 for rape. The principal question for decision is whether, under the circumstances of the case, and in view of the defendant's present claim that his plea of guilty was induced by coercion and fear, his arrest, arraignment, plea of guilty and sentence, all having occurred on the same day, constituted a denial of due process of law under article 14, § 1, of the amendments to the United States Constitution, and article 2, § 16, of the Michigan Constitution (1908). A secondary claim, urged by appellant, is that the proceeding was in violation of section 19 of said article 2, in that he was deprived of the right to a public trial.

On July 30, 1942, a white female over 16 years of age made complaint in writing that the defendant, a Negro, then 25 years of age, did on that day assault

and rape her. A warrant was issued and on August 5, 1942, when the defendant arrived at the home of friends in Ypsilanti, having journeyed there from Chicago where he had gone after July 30th, he was told that he was wanted by the police and thereupon went to the State police post in that city where he was questioned. He was then taken to the State police post at Redford where he was met by 2 officers of the police force of the city of Mt. Clemens and taken by them to the jail at that city, where he was registered, fingerprinted and his picture taken. He was placed in a cell, later brought to the office of the chief of police where he was questioned by an assistant prosecuting attorney and signed a typewritten confession. He was then brought before a justice of the peace at the jail, waived preliminary examination, was bound over to the circuit court for trial and bail was fixed. Then he was taken to the county courthouse building which was adjacent. It was then about 10 p.m. The circuit judge convened open court, in the presence of the court stenographer, the chief of police, 2 police officers, and 2 assistant prosecuting attorneys. The courtroom doors were open to the public. A meeting of the Mt. Clemens city commission was also being held in the building, but it was not definitely established at what time the persons present thereat left the building.

An information was read to the defendant charging him with rape, and on said arraignment defendant pleaded guilty. In open court he was questioned at length by an assistant prosecutor and by the circuit judge, and a record made. He freely told what had occurred preceding the commission of the crime, of the crime itself in detail, of events thereafter, and admitted his guilt. He was sentenced to life imprisonment and taken to the Oakland county jail, in Pontiac, for the night. He was transferred

to the Southern Michigan State prison the following day.

The 2 police officers who had brought the defendant to Mt. Clemens from Redford and who had him in custody in circuit court during the arraignment and sentencing later testified that Chief of Police Rosso, who is now deceased, was afraid of mob violence; however, they denied that these fears were ever communicated to the defendant.

Subsequent proceedings had in the trial court add many facts and circumstances material to a fair understanding and decision of the question in the case, as it now comes to this Court. In October, 1947, more than 5 years after his plea of guilty and sentence, the defendant filed in the circuit court an application for leave to file a delayed motion for a new trial. As grounds for a new trial the defendant at that time claimed that his constitutional rights had been disregarded. Quoting from articles 5 and 6 of the amendments to the United States Constitution, the defendant claimed:

"Under the provisions of these amendments, it makes it mandatory that the respondent be indicted by a grand jury, have a jury trial, and the assistance of legal counsel. * * * Under the United States Constitution there is no such thing as a plea of guilty to any crime."

It is significant that nowhere in this application, as ground for a delayed motion for a new trial, filed 5 years after his sentence, or in his affidavit attached, does the defendant deny his guilt, or claim that his plea of guilty was induced by fear or coercion, as he claimed later in another application (to which reference will later be made herein). The defendant mainly relied on the fact that he did not have an attorney to represent him. The circuit judge held a hearing on the application and motion and denied

it, filing a lengthy opinion quoting the record made in open court at the time the defendant was sentenced, pointing out that at no time had the defendant requested counsel, that ample opportunity had been afforded the defendant to ask for counsel, and quoting from statements made by the defendant in open court where he had freely told how he had threatened the complaining witness with a knife, had intercourse, and admitted that she was in fear of her life. Answering the court at the time of his arraignment after pleading guilty, he said:

"Q. (By the court) You know the seriousness of what you have done?

"A. Somewhat, sir.

"Q. What kind of sentence you think you ought to get?

"A. I am ready for anything that is supposed to come to me.

"Q. What?

"A. I am willing for anything supposed to come to me, sir.

"Q. You know it carries a life sentence, do you?

"A. I didn't know that, no, sir, I didn't know that, sir. * * *

"Q. The fact it might carry a life sentence, that make any difference in your plea of guilty?

"A. I wouldn't change my plea because I know I am guilty; no use trying to run around—trying to fight it."

In June, 1952, 10 years after his sentence, the defendant filed a second application for leave to file a delayed motion for a new trial, claiming for the first time that his plea of guilty was made following a threat of mob violence by persons gathered outside the court building at the time, and for the first time claiming innocence. Attached to his affidavit were copies of newspaper articles reporting the crime and making reference to mob violence.

However, we have nothing to show that these articles were brought to the defendant's knowledge or attention prior to his plea of guilty and sentence. The defendant's affidavit that he was taken from the jail to the courtroom through a tunnel was refuted —there was no such tunnel. His statement that he was taken to a window in the courtroom and shown a mob was also denied as well as refuted by the testimony of witnesses at the hearing on this motion. There was no such window from which a mob could have been seen. His statement that he was told at the jail that a mob had gathered was refuted by all of the officers at the jail, in testimony taken by the court at the hearing held in open court on said application and motion. Other accusations, obviously conceived in support of said motion 10 years after his conviction, were definitely refuted by witnesses sworn at said hearing. Again, the trial court filed a lengthy opinion and in March, 1953, the court entered an order denying the motion. On June 8, 1953, this Court entered an order denying an application by the defendant for leave to appeal from said order. However, the attorney general of the State filed here a motion to set aside our order denying leave to appeal and asking that this Court remand the cause to the court below for the purpose of taking testimony in the trial court from witnesses who might have knowledge of the truth or falsity of the defendant's assertions. We entered an order remanding the cause to the lower court where a hearing was held and testimony taken. The defendant was there in court in person and represented by counsel, testified, and was allowed full cross-examination of the witnesses sworn. Those proceedings have been certified to this Court in full and are now in the typewritten record here, with a further opinion of the circuit judge filed May 4, 1954. The trial court again denied the motion for a new trial. On July

2, 1954, we granted the defendant leave to appeal from this final order denying a new trial, nothing having been filed in opposition to the defendant's application for leave to appeal. The appeal has been submitted, on a typewritten record and briefs filed by the appellant, which we have accepted without being printed, and a printed brief filed by the people.

It is not necessary to encumber the opinion with further details of all the facts and circumstances. A careful examination of the record before us leaves no room for doubt but that the defendant is guilty of the crime as charged. Appellant's claim in seeking to set aside his plea of guilty and his sentence, and for a new trial, seems to be that, under the circumstances, he was denied due process of law because the sentencing court allowed this entire matter, from arrest to sentence, to be concluded in 1 day, obviously relying on *DeMeerleer* v. *Michigan,* 329 US 663 (67 S Ct 596, 91 L ed 584). In support of his claim, the defendant now asserts, after this 10-year delay, that his plea of guilty was induced by coercion and fear. In view of the *Quicksall Case,* handed down by the United States supreme court in 1950 and later referred to herein, the defendant apparently does not press his original claim that due process of law was denied him because his plea was accepted without having been provided an attorney. He did not ask for one.

Before he could depend on any claim of mob violence or fear, the defendant freely admitted his guilt to the police officers when arrested and before he was taken into court. He makes no showing that his first confession was induced by promises, threats, coercion, intimidation or fear. His plea of guilty and his admissions made in open court as to his guilt and the manner in which the crime had been committed followed in detail his earlier con-

fession to the police. The defendant claims he was put in fear, and intimidated, when he was taken into court, notwithstanding the obvious fact that he had already freely admitted his guilt, at a time when such claims could not have been true. The defendant's present unsupported claims, made for the first time 10 years after sentence, and completely refuted by the testimony of witnesses before the court at the hearing of his delayed motion for a new trial, are not convincing. Nor was the defendant then an innocent young man unfamiliar with court proceedings. When the crime of rape was committed he was 25 years of age. In 1936 he had been convicted of the crime of robbery and sentenced to State prison. He learned then the court procedure when he first pleaded guilty, later changed his plea and was afforded an attorney, on whose advice he again pleaded guilty and was sentenced. He had been married, and separated from his wife. He had also been arrested in Cleveland on a charge of statutory rape, but was released without a determination as to his guilt.

In *DeMeerleer* v. *Michigan, supra,* the defendant was 17 years of age, the sentencing court did not explain the consequences of his plea of guilty, and the defendant was confused as to the effect of a plea of guilty. In contrast, the defendant in the case at bar was fully advised of the consequences, told by the court that he might be given a life sentence, and in effect the defendant told the court that he did not desire counsel or delay, saying that "I wouldn't change my plea because I know I am guilty; no use trying to run around— trying to fight it." He had been through quite a similar situation in court in 1936 when he pleaded guilty to robbery in the recorder's court in Detroit. He knew the effect of his plea, in contrast to the situation in the *DeMeerleer Case.*

In the sentencing court, and again in this Court, the defendant has been given every opportunity to substantiate his claim of lack of due process, and his request for a new trial. We have obtained the full record and carefully reviewed it, and examined the circumstances attending each step from the time of the commission of the crime to the final submission of the defendant's appeal to this Court. While we are not in sympathy with the course followed in the trial court, we entertain no doubt as to the defendant's guilt, and we conclude, from a thorough review of all the circumstances attending the defendant's arrest, concluding with his sentence to State prison, that the fact that under the circumstances of this case these proceedings all took place in 1 day, with the haste obviously sought by or concurred in by the defendant, does not establish that justice requires that the defendant now be granted a new trial. We find no merit in the defendant's belated claim that his plea of guilty was coerced or induced by intimidation or fear. No other assertions have been made, either in the lower court or here, of any irregularities in any of the proceedings, up to the present time.

The circumstances of this case closely parallel the situation that came before the United States supreme court from this State in 1950, where that court, in an opinion delivered by Mr. Justice Frankfurter, concluded:

"To invalidate a plea of guilty the prisoner must establish that 'for want of benefit of counsel an ingredient of unfairness actively operated in the process that resulted in his confinement.' *Foster* v. *Illinois,* 332 US 134, 137 (67 S Ct 1716, 91 L ed 1955); see *Gibbs* v. *Burke,* 337 US 773, 781 (69 S Ct 1247, 93 L ed 1686). Here petitioner's claim that the consequences of his plea of guilty had been misrepresented was disbelieved by the tribunal especial-

ly qualified to sit in judgment upon its credibility. See *Wade* v. *Mayo*, 334 US 672, 683, 684 (68 S Ct 1270, 92 L ed 1647). In the light of what emerged in this proceeding upon a scrutiny of what took place before the same judge 10 years earlier, when petitioner's plea of guilty was tendered and accepted, it would stultify the due process clause to find that any right of the petitioner was infringed by the sentence which he incurred. *Foster* v. *Illinois, supra,* at p 138; *Bute* v. *Illinois,* 333 US 640, 670–674 (68 S Ct 763, 92 L ed 986)." *Quicksall* v. *Michigan,* 339 US 660, 666 (70 S Ct 910, 94 L ed 1188).

As to defendant's second claim that under the mandate in section 19 of article 2 of the amendments to the United States Constitution he was deprived of the right to a speedy and public trial, the answer is obvious. There is such a proceeding in the law as a plea of guilty to the commission of a crime, and one who pleads guilty is not constitutionally entitled to a trial to determine his guilt, unless his plea of guilty is refused by the court, or is first set aside.

The defendant freely, voluntarily and understandingly pleaded guilty to the crime of rape, without coercion or intimidation, and the order denying the motion for a new trial is affirmed.

CARR, C. J., and BUTZEL, SMITH, SHARPE, REID, DETHMERS, and KELLY, JJ., concurred.