## COOPER et al. v. HUTCHINSON.

### No. 10153.

United States Court of Appeals
Third Circuit.

Argued May 24, 1950.

Decided July 21, 1950.

Kalodner, Circuit Judge, dissented in part.

O. John Rogge, New York City, David Levinson, Philadelphia (William L. Patterson, Emanuel H. Bloch, New York City, Solomon Golat, Newark, N. J., Murray A. Gordon, Robert H. Goldman, Jerome J. Bornstein, all of New York City, on the brief), for appellants.

John W. Griggs, Deputy Atty. Gen. of New Jersey (Theodore D. Parsons, Atty. Gen. of the State of New Jersey, on the brief), for appellee.

George Gildea, Trenton, N. J., on the brief, amici curiae for Special Committee.

Before GOODRICH, WOODBURY, and KALODNER, Circuit Judges.

GOODRICH, Circuit Judge.

This litigation seeks an injunction against a trial judge in a state court of New Jersey which would prohibit further proceedings in a capital case before him unless certain out-of-state lawyers are permitted to act as counsel for the defendants therein.

No disputed question of fact arises; the question at this point is wholly one of law. The record consists only of the complaint and supporting affidavits, a motion by the defendant to dismiss and a motion by the plaintiffs for a temporary injunction. The complaint was dismissed by the District Court and the motion for a temporary injunction denied. D.C.N.J.1950, 88 F.Supp. 774. The plaintiffs have appealed.

The appellants were tried and convicted of the crime of murder in a state court of New Jersey and were sentenced to death. They were represented by court-appointed counsel. Following their conviction, certain other lawyers were substituted as counsel in place of the original lawyers at the request of the appellants. The substituted lawyers were Solomon Golat and Clarence Talisman, both of the New Jersey bar, and O. John Rogge, William L. Patterson and Emanuel H. Bloch, all of the New York bar. The out-of-state lawyers were admitted pro hac vice in the Supreme Court of New Jersey and later in the Mercer County Court, where the murder charge was being prosecuted. The appellate proceedings on behalf of the convicted persons before the Supreme Court of New Jersey resulted in a reversal. State v. Cooper, 1949, 2 N.J. 540, 67 A.2d 298. The case was remanded to the trial court and the out-of-state lawyers, with local counsel, proceeded with various motions and other preliminary matters prior to a retrial of the murder charge. On December 16, 1949, the trial judge, who is the defendant in this litigation, entered an order depriving Messrs. Rogge, Patterson and Bloch of further authority to appear in the murder case. There was no hearing, there was no charge of misconduct so far as the record shows. All we have is the complaint filed in the District Court by the appellants, which alleges that the removal was "summary, arbitrary, capricious and unreasonable." The plaintiffs also allege that the out-of-state attorneys conducted their defense "in a competent and ethical fashion, and conformed without reservation to all canons of ethics prescribed by the American Bar Association and the rules and regulations of the Courts of New Jersey * * *." At this stage of the proceedings, of course, we must assume the truth of these allegations. The appellants then sought an injunction in the federal court for the district of New Jersey to prohibit the trial judge from proceeding further with the case until he allowed the lawyers mentioned to represent them, and to enjoin the trial judge from refusing to recognize the out-of-state lawyers.

These appellants say that they have been deprived of due process of law by the action of the New Jersey trial judge. To deprive them of due process of law is, of course, a violation of the Fourteeth Amendment.[1] The appellants point to the Sixth Amendment,[2] which guarantees the assistance of counsel in trials in the federal courts, and to our own decision in United States v. Bergamo, 3 Cir., 1946, 154 F.2d 31, holding that the right to counsel in a federal criminal proceeding includes the right to out-of-state counsel of the defendant's own choosing. The appellants also say that in the Bergamo case we held that the right to counsel of one's choice is a requirement of due process of law under the Fifth Amendment,[3] and must necessarily be included within the rights protected by the due process clause of the

1. U.S.Const., Amend. XIV: "* * * No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law * * *."

2. U.S.Const., Amend. VI: "In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence."

3. U.S.Const., Amend. V: No person shall be "deprived of life, liberty, or property, without due process of law * * *."

Fourteenth. See 154 F.2d at page 34, fn. 2. The conclusion of the appellants' argument is that the rule we laid down in the Bergamo case for federal courts in this circuit is a necessary requirement of due process of law and therefore applicable to all capital trials in state courts as well. The authority relied upon is the line of decisions which began with Powell v. Alabama, 1932, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527.

The next step in the appellants' case is to bring in the very strong provisions of Section 1 of the Civil Rights Act of 1871, Rev.Stat. § 1979 (1875), 8 U.S.C.A. § 43.[4] This lays the foundation, the argument runs, for direct action against the state officer by whose official act the constitutional rights of the appellants have been invaded. See Picking v. Pennsylvania R. Co., 3 Cir., 1945, 151 F.2d 240, 250–251.

The argument for the appellants thus necessarily goes far beyond an insistence that a man charged with a capital crime in a state court must have the assistance of counsel. These appellants have had the service of counsel all the way through the prosecution of the charges against them. The narrower question here is the extent to which an accused person's choice of counsel is a constitutional right. The argument insists that there is a constitutional right, at least in a capital case, to whatever counsel an accused person pleases to have. If that counsel is not a member of the bar of the state where the prosecution is being conducted, still, the argument runs, the accused may effectively choose him just as freely as he could choose a lawyer admitted to practice locally. The person chosen by the accused may then insist upon conducting the defense in the local courts. Control by the states over the persons who may be licensed to practice law in their courts would thus be greatly diminished in every capital criminal prosecution where the accused desires counsel from somewhere else.

The length to which this argument takes one is startling. It has always been thought that the license to practice law is limited, except as a matter of grace, to persons who had fulfilled the local requirements for practice. The Civil Rights Act provision relied upon here is a powerful piece of legislation and its power has been recognized by this Court.[5] But we have never been asked to take it this far. The Bergamo case, which has been pressed upon us, is not conclusive here, for in that case we were only laying down qualifications for the trial of cases in the federal courts of this circuit.

To determine the immediate litigation, however, we need not go to the length which the argument for the appellants invites us to go. When occasion demands it we shall face and decide the broad question. But the occasion does not require it here. These lawyers whose right to represent the appellants has been denied were not interlopers. As the statement of facts above indicates, they were associated with local counsel. And they were admitted pro hac vice in accordance with a custom that was apparently recognized as early as 1629 by English judges of Common Pleas.[6] This custom of permitting the appearance of out-of-state lawyers had become "general" and "uniform" in the United States as early as 1876.[7] Moreover, the practice is expressly recognized by the new rules which have been promulgated by the Su-

---

4. Rev.Stat. § 1979 (1875), 8 U.S.C.A. § 43: "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

5. Valle v. Stengel, 3 Cir., 1949, 176 F.2d 697; Picking v. Pennsylvania R. Co., supra.

6. Thursby v. Warren, 4 Car. 1, 79 Eng. Rep. 738 (C.P. 1629). See 6 Holdsworth, A History of English Law 435–436, 453, 456–457 (1924); Merrifield, The Law of Attornies 41–44 (1830).

7. In re Mosness, 1876, 39 Wis. 509, 20 Am.Rep. 55. See 1 Thornton, A Treatise on Attorneys at Law § 22 (1914).

preme Court of New Jersey to govern practice and procedure in the courts of that state.[8]

▮▮ We think it clear that limited to one case though the right of these attorneys to practice was, their standing with respect to this case was no different from that of any other regularly admitted local lawyer. The New Jersey rule itself provides that they may appear "to speak in such cause in the same manner as an attorney or counsellor of this State." While admission pro hac vice is stated in the rule to be in the discretion of the court, the rights and duties of an outside lawyer, once so admitted, appear to be the same as those of a local lawyer. We think that admission pro hac vice, as the rule seems to indicate, is for the entire "cause" and that counsel so admitted in a capital case cannot be arbitrarily and capriciously removed without depriving their clients of rights conferred by the constitution.

Our view of the rights of a lawyer once engaged in a given case is supported by the decision of the former Supreme Court of New Jersey in Faughnan v. City of Elizabeth, 1895, 58 N.J.L. 309, 33 A. 212. In that case it was held that a properly admitted attorney who commences a lawsuit may continue to represent his client throughout the course of that litigation even though the attorney subsequently becomes ineligible for practice in New Jersey by moving away. "Removal of residence, therefore, does not deprive the attorney of the powers conferred by his original warrant of attorney until his client, of his own motion, * * * substitutes another in his place as attorney." 58 N.J.L. at page 311, 33 A. at page 213.

There are numerous instances in the law where one, through voluntary action by another, acquires rights which he did not have before. Thus while one has no obligation to open his premises to a social guest, once he has done so the guest is entitled to warning of hidden dangers in the premises known to the occupier (Restatement, Torts § 342) and the latter is under a duty to use reasonable care not to hurt his licensee (Restatement, Torts § 341). Nor can the occupier summarily revoke the permission and eject his no longer welcome visitor into a situation of danger. Depue v. Flatau, 1907, 100 Minn. 299, 111 N.W. 1, 8 L.R.A., N.S., 485. And one who gratuitously undertakes to do something for or to another must use reasonable care not to leave the other worse off as a result of the voluntary intervention. Restatement, Torts §§ 323–325; Black v. New York, N. H. & H. R. Co., 1907, 193 Mass. 448, 79 N.E. 797, 7 L.R.A.,N.S., 148, 9 Ann.Cas. 485.

These analogies are obviously not conclusive of the present case. But they do show that rights may be acquired by one from action by another, even though that action could not be legally demanded. Assuming that these accused persons could not have claimed representation by out-of-state lawyers as a constitutional right, the representation was granted and may not, without cause, be taken away.

▮ We have, then, the same situation here as we would have had if a resident member of the Mercer County bar had been abruptly cut off in his representation of a client in a capital case without hearing, without misconduct on his part, without reason assigned for the action. It seems to us that the error is manifest. The client's right to representation has been interfered with; the lawyer's right in his professional employment is likewise invaded.

How should the error be corrected? By the injunction sought in this proceeding? It seems pretty clear to us that the error is subject to correction in the state of New Jersey. Undoubtedly it could be availed of in an appeal if, upon further prosecution, appellants are again convicted. Furthermore, the New Jersey rules cited to us make it appear that if the effect of the error is irreparable damage an interlocutory ap-

8. N.J.Rule 1:8–10(b): "Any attorney or counsellor from any other of the United States, of good standing there, may, at the discretion of the court in which any cause is pending, be admitted, pro hac vice, to speak in such cause in the same manner as an attorney or counsellor of this State."

peal is available.[9] While we cannot give an authoritative interpretation to the New Jersey court rule, it seems to us that to break off an attorney-client relation while a case is pending for trial after a reversal must fall within the irreparable class. How can such an injury be measured or repaired?

But appellants say that their right to assert a claim under Section 1 of the Civil Rights Act of 1871 is not dependent upon the prior pursuit of relief under state law. That is correct. Lane v. Wilson, 1939, 307 U.S. 268, 274–275; 59 S.Ct. 872, 83 L.Ed. 1281. We are not here governed by the rule of the habeas corpus cases to the effect that the state law processes must be exhausted before there can be resort to a federal court.[10] And the provision in the Judicial Code forbidding the use of the injunction against state court action has a stated exception when a federal statute allows it, as it does here.[11]

Nevertheless, this is a suit in equity. The giving of the peculiarly characteristic remedies available in equity lie in a chancellor's discretion, subject, of course, to review. We think a chancellor's discretion in this case requires a withholding of his arm from interfering at a preliminary stage in state litigation, at least until it has become apparent that state procedure cannot avert irreparable harm to these appellants. The Supreme Court has warned us constantly about interfering in the delicate matter of the balance between state and national authority. The

"arrest by the federal courts of the processes of the criminal law within the states * * * [is] to be supported only on a showing of danger of irreparable injury 'both great and immediate.'" Douglas v. City of Jeannette, 1943, 319 U.S. 157, 163–164, 63 S.Ct. 877, 881, 87 L.Ed. 1324. And see Spielman Motor Sales Co., Inc., v. Dodge, 1935, 295 U.S. 89, 55 S.Ct. 678, 79 L.Ed. 1322; Matthews v. Rodgers, 1932, 284 U.S. 521, 52 S.Ct. 217, 76 L.Ed. 447.

In some instances, federal courts have been told to await a state decision on a substantive law civil matter where determination of that matter was necessary to complete pending federal litigation. Thus, in Railroad Commission of Texas v. Pullman Co., 1941, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971, the Texas Railroad Commission ruled that sleeping cars operated within that state must be in the continuous charge of an employee having the rank and position of Pullman conductor A three-judge federal court enjoined enforcement of that order because it contravened the Fourteenth Amendment. The Supreme Court reversed and ordered the District Court to retain jurisdiction of the bill until it could be determined in a state court whether the commission's order was in excess of its statutory authority. The Pullman case technique was subsequently employed in A. F. of L. v. Watson, 1946, 327 U.S. 582, 66 S.Ct. 761, 90 L.Ed. 873; Spector Motor Service, Inc. v. McLaughlin, 1944, 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101; City of Chicago v. Fieldcrest Dairies, Inc.,

9. Generally, "No appeal shall be taken in any criminal case until final judgment has been rendered. * * *" N.J.Stat. Ann. § 2:195A–3 (Cum.Supp.1949). But "Appeals may be taken to this court [Superior Court of New Jersey] from orders or judgments, whether or not interlocutory * * * (d) When necessary to preserve and maintain the res or status quo pending final judgment, and prevent irreparable injury or mischief." N.J.Rule 4:2–2. To the same effect for appeals to the Supreme Court is N.J. Rule 1:2–2.

10. The exhaustion of remedies rule of Ex parte Hawk, 1944, 321 U.S. 114, 64 S.Ct.

448, 88 L.Ed. 572, is codified by 28 U.S.C. A. § 2254 (1946 Supp. III). See Reviser's Note to that section.

11. 28 U.S.C.A. § 2283 (1946 Supp. III): "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." The Civil Rights Act provision relied upon here expressly provides for a "suit in equity" by the aggrieved party. Rev. Stat. § 1979 (1875), 8 U.S.C.A. § 43.

1942, 316 U.S. 168, 62 S.Ct. 986, 86 L.Ed. 1355. As those decisions indicate, it is a very delicate matter for a federal court to interfere with the processes of state courts. It is even more delicate when the processes sought to be interfered with are prosecutions for crime brought by the state in its own courts. We do not say that those decisions decide the point of this case. But they do serve to point out to us the extreme delicacy of the subject-matter here involved.

■ We think the ends of justice in this case will be best preserved by the following action: We shall vacate the judgment of the trial court and remand this case to the District Court for the District of New Jersey. We shall instruct the trial court to retain jurisdiction in this suit for an injunction pending interlocutory determination, by New Jersey courts, of the appellants' rights to the professional services of their lawyers who were admitted to handle their cases and whose representation, it is alleged, was summarily cut off. If the appellants' allegations are true, we have little doubt that the New Jersey courts, if not the defendant himself, will rectify this deprivation of constitutional rights once the situation has been brought to their attention. In that event, this proceeding may be dismissed as moot.

The judgment of the District Court will be vacated and the case remanded for further proceedings consistent with this opinion. No costs.

KALODNER, Circuit Judge (dissenting in part).

I am of the opinion that there should be an affirmance.

I agree with the majority that under New Jersey Rule 4:2–2 there is available to the appellants an appeal to the New Jersey Supreme Court from the action of the State Court in ousting the out-of-state counsel. In view of this fact I am of the opinion that the District Judge was not guilty of an abuse of legal discretion in denying the motion for an injunction. Further, it would set a most unfortunate precedent if in situations where an appeal is available to litigants in proceedings in the State Courts the Federal Courts should intervene before there had been an exhaustion of the State remedies. It has been the policy of the Federal Courts, as stated in the majority opinion, to refrain from arresting the processes of the criminal law within the States unless there is "a showing of danger of irreparable injury 'both great and immediate'". Such showing has not been made in the instant case.

It is an anomaly to find that the District Judge's discretion required "a withholding of his arm from interfering at an interlocutory stage in state litigation" and at the same time vacate the decree which does so. It is indicated that the action of this Court in vacating the decree is merely for the dual purpose of retaining jurisdiction until the appellants pursue the available remedies in the State Courts and enabling the District Judge to act in the event that the State Courts deny appellants what the majority believe to be their constitutional rights.

I can see no reason for such a course. The District Judge having properly denied the motion for an injunction in the posture of the case as it existed at the time the motion was made, his judgment should be affirmed. To vacate the decree merely for the purpose of retaining jurisdiction carries the inevitable implication that the State Courts may act improperly in denying the appellants their constitutional rights. It is not our function to police the State judiciary. The dangerous potentialities of such a situation need not be stressed An affirmance of the District Judge's dismissal of the complaint and his denial of the motion for an injunction would not in any way preclude or prejudice a second complaint and motion for an injunction should the State Courts not see eye to eye with the majority on the fundamental constitutional question involved.