**Larry FLYNT, Hustler Magazine, Inc., Herald Price Fahringer, and Paul J. Cambria, Jr., Plaintiffs,**

v.

**Simon L. LEIS, Jr., Prosecuting Atty., Hamilton County, Ohio, Hon. Robert S. Kraft, Judge of Hamilton County Common Pleas, and Hon. William J. Morrissey, Judge of Hamilton County Common Pleas, and the Hamilton County Court of Common Pleas, Defendants.**

**Civ. No. C–1–77–319.**

United States District Court, S. D. Ohio, W. D.

July 6, 1977.

Herald Price Fahringer, Paul J. Cambria, Jr., Buffalo, N. Y., Andrew B. Dennison, Cincinnati, Ohio, for plaintiffs.

Fred J. Cartolano, First Asst. Pros. Atty., Hamilton County, Cincinnati, Ohio, for defendants.

## FINDINGS OF FACT, OPINION AND CONCLUSIONS OF LAW

CARL B. RUBIN, District Judge.

This matter is before the Court on the request of plaintiffs for a preliminary and permanent injunction and for a declaratory judgment. Oral argument to the Court was presented June 29, 1977. In accordance with Rule 52 of the Federal Rules of Civil Procedure, the Court does submit herewith its Findings of Fact and Conclusions of Law.

I

### FINDINGS OF FACT

1. The significant plaintiffs involved herein are Herald Price Fahringer and Paul J. Cambria, Jr., both of whom are attorneys at law admitted to practice [1] in the State of New York and in the United States District Court for the Western District of New York. Both have served as counsel for plaintiffs Larry Flynt and Hustler Magazine, Inc. in the Court of Common Pleas of Hamilton County, Ohio.

Significant defendants include William J. Morrissey, Judge of the Court of Common Pleas of Hamilton County, Ohio, and Robert S. Kraft, Presiding Judge of the Court of Common Pleas of Hamilton County, Ohio.

2. Plaintiffs Larry Flynt and Hustler Magazine, Inc. were indicted by the Grand Jury of Hamilton County, Ohio, under Indictment B–770341, charging violation of Ohio Revised Code § 2907.31. Such indictment was returned February 8, 1977. On February 23, 1977, plaintiffs Fahringer and Cambria entered an appearance by local counsel in the above-entitled matter and such entry was endorsed by The Honorable Rupert Doan, Judge of the Common Pleas Court of Hamilton County, Ohio. The form entry was in accordance with customary procedures of that court. On previous occa-

sions and without imposition of any additional procedural requirements, plaintiffs Cambria and Fahringer had likewise been admitted to appear in the Court of Common Pleas of Hamilton County, Ohio. Specifically, in 1976 and 1977, the plaintiffs appeared in Criminal Matter No. B 761618 pursuant to an indictment filed against plaintiff Larry Flynt and others, and proceeded through all phases of such matter including pretrial motions and trial on the merits.

3. Plaintiffs Fahringer and Cambria are not now nor have they ever been admitted to practice in the State of Ohio.[2] No evidence of any disciplinary action against them by any bar association has been presented to the Court, nor is there reason to believe that any such action is presently contemplated. Both are competent, experienced and qualified in the representation of persons charged with crimes.

4. On April 8, 1977, during an appearance in Criminal Matter No. B 770341, defendant The Honorable William J. Morrissey, ordered Mr. Fahringer and Mr. Cambria removed as counsel in the following language: ". . . Mr. Fahringer and Mr. Cambria are not attorneys of record in this case and will not be permitted to try this case. Andrew Dennison will be the attorney of record . . . ." While further colloquy occurred between plaintiffs and Judge Morrissey, no reasons for their removal were ever assigned nor was an opportunity for a hearing granted to plaintiffs either then or thereafter.

5. Through subsequent proceedings, this matter was transferred to defendant The Honorable Robert Kraft. On May 10, 1977, Judge Kraft, likewise without assigning reasons or granting an opportunity for hearing, concurred in the removal of plaintiffs by declining to permit their appearance.

---

1. The phrase "admitted to practice" as used herein will refer to the formal procedure whereby a person after complying with requirements of the highest court in a state is licensed to practice law in that state. The term "foreign counsel" will refer to such a person in appearances in states where he has not been licensed to practice law but has been permitted to appear *pro hac vice.*

2. Id. n. 1.

## II

## OPINION

### A. *Injunctive Relief*

As a basis for decision this Court relies upon the following propositions of law:

■ 1. There can be no doubt that admission and removal of foreign counsel are matters within the sound discretion of a trial court. Such counsel do not possess an unlimited or unqualified right to practice law. *Ross v. Reda,* 510 F.2d 1172 (6th Cir. 1975); *United States v. Dinitz,* 538 F.2d 1214 (5th Cir. 1976); *In re Evans,* 524 F.2d 1004 (5th Cir. 1975); *In the Matter of Melvin Belli,* 371 F.Supp. 111 (D.D.C.1974); *Thomas v. Cassidy,* 249 F.2d 91 (4th Cir. 1957).

■ 2. The right of a court to exclude foreign counsel is likewise not absolute. *Ross v. Reda, supra; In re Evans, supra.*

3. The exercise of sound discretion by a court can only follow a due process hearing after notice and an opportunity for counsel to defend himself and his professional reputation. *In re Evans, supra; Cooper v. Hutchinson,* 184 F.2d 119 (3d Cir. 1950).

Counsel have favored the Court with an exhaustive listing of appropriate authorities. In excess of 120 cases have been submitted as bearing upon the issues in question. Of those, 80 are determinations by the Supreme Court of the United States and 44 are holdings by various other Federal courts. In this extensive review there is not one case cited nor has one been found by this Court's own research where denial of appearance *pro hac vice* or removal therefrom was accomplished without a hearing.

Foreign counsel were excluded in *Ross, Dinitz, Belli* and *Thomas.* Foreign counsel were admitted in *Evans* and *Cooper.* But all such determinations occurred after hearing and for appropriate reasons. Indeed, the determination of the United States Court of Appeals for the Third Circuit in *Cooper v. Hutchinson, supra,* was based primarily upon the lack of a due process hearing.

There are grave implications inherent in any arbitrary exclusion of counsel from representation of a party. Aside from the obvious immediate loss of income, an attorney summarily removed from representation without cause or opportunity to be heard must suffer an irreparable blow to his professional standing and his future employment prospects.

■ While it is true that plaintiffs' interest in reputation alone is insufficient to implicate property rights under the Fourteenth Amendment, it is likewise true that when an "interest" has been initially recognized and protected by state law or the Constitution, a deprivation or restriction of that "interest" which results in injury to reputation requires procedural safeguards. *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971).

As the Supreme Court stated in *Roth* :

To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. *It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.*

Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. (emphasis added)

*supra* 408 U.S. at 577, 92 S.Ct. at 2709.

■ Plaintiffs' admission to appear *pro hac vice* in the Court of Common Pleas of Hamilton County, Ohio was such a property

interest and its termination without due process violated their Fourteenth Amendment rights.

The conclusion that plaintiffs are entitled to a hearing before their property rights are withdrawn does not end the matter. Federal courts have been admonished not to interfere with the criminal processes of the state courts. The Supreme Court of the United States has spoken to this matter directly and specifically in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). In *Younger,* Federal courts were directed not to enjoin pending state criminal prosecutions except under extraordinary circumstances.

In *Kugler v. Helfant,* 421 U.S. 117, 124–125, 95 S.Ct. 1524, 1531, 44 L.Ed.2d 15 (1975), the Supreme Court repeated this admonition and elaborated upon the meaning of the extraordinary circumstances exception:

> The very nature of "extraordinary circumstances," of course, makes it impossible to anticipate and define every situation that might create a sufficient threat of such great, immediate, and irreparable injury as to warrant intervention in state criminal proceedings. But whatever else is required, such circumstances must be "extraordinary" in the sense of creating an extraordinarily pressing need for immediate federal equitable relief, not merely in the sense of presenting a highly unusual factual situation.

The Court is convinced that this case presents such a need. Plaintiffs Fahringer and Cambria are not parties to the action before the Court of Common Pleas of Hamilton County, Ohio, and their rights cannot be the subject of an appeal therefrom. They may not, by a writ of mandamus, test the discretionary right of a judge of the Court of Common Pleas to exclude them from representation of their clients. Consequently, plaintiffs lack an opportunity to present their federal claims in the ongoing state proceeding, and the strictures of *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) do not apply.

This Court does not pass on the guilt or innocence of the indicted parties. It does not hold that the plaintiffs Fahringer and Cambria have an unlimited and unqualified right to represent the defendants in this case. We do hold that they are entitled as a matter of right to be heard.

When faced with an equivalent situation, the United States Court of Appeals for the Third Circuit in *Cooper v. Hutchinson, supra,* indicated that an injunction of further proceedings until out-of-state lawyers were permitted to be heard was not an improper exercise of federal authority.

### B. *Declaratory Judgment*

Plaintiffs also request a declaratory judgment that Ohio Revised Code Section 2907.31 and its definitory Section 2907.01 are repugnant to the First and Fourteenth Amendments to the Constitution of the United States. This Court has previously dealt with a similar assertion in the matter of *Flynt v. Leis,* No. C–1–76–553. For the reasons stated in the order dated November 30, 1976, this Court declines to hold either that such statutes are unconstitutional or that they fail the test of *Watson v. Buck,* 313 U.S. 387, 61 S.Ct. 962, 85 L.Ed. 1416 (1941).

### III

### CONCLUSIONS OF LAW

A. This Court has jurisdiction in accordance with 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3), and under the Sixth and Fourteenth Amendments to the United States Constitution.

B. Admission to practice before the highest court of any state of the United States creates a presumption of good moral character, and a person so admitted may not be denied the right to appear *pro hac vice* in the state courts of Ohio without a showing of prior unethical behavior or a refusal to abide by the canons of professional ethics or the rules of the courts of Ohio. *Ross v. Reda,* 510 F.2d 1172 (6th Cir. 1975); *In re Evans,* 524 F.2d 1004 (5th Cir. 1975).

C. The right of an attorney to represent a client is a property right and may not be taken from him without due process of law. At a minimum, such due process must include a hearing with adequate advance notice and with specification of alleged misconduct. *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); *In re Evans, supra; Cooper v. Hutchinson,* 184 F.2d 119 (3d Cir. 1950).

D. The right of an attorney to a hearing is the same whether he seeks initial admission *pro hac vice* or where such admission has been granted and subsequently rescinded.

E. Removal of counsel without procedural due process, and absent an available forum for raising constitutional issues in a state judicial proceeding is a sufficiently extraordinary circumstance for a federal court to intervene in a pending state criminal prosecution. *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977); *Kugler v. Helfant,* 421 U.S. 117, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975); *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

F. Ohio Revised Code §§ 2907.01 and 2907.31 are not flagrantly and patently violative of express Constitutional prohibitions in every clause, sentence and paragraph and in whatever manner and against whomever an effort might be made to apply them. Lacking such finding, a federal court may not enjoin prosecution thereunder. *Watson v. Buck,* 313 U.S. 387, 61 S.Ct. 962, 85 L.Ed. 1416 (1941).

G. An injunction should issue against the judges of the Court of Common Pleas of Hamilton County, Ohio, restraining the prosecution of criminal matter No. B 770341 until plaintiffs herein, Herald Price Fahringer and Paul J. Cambria, are granted an appropriate hearing on their right to represent the defendants in such criminal matter. *In re Evans, supra.*

LET JUDGMENT ISSUE IN ACCORDANCE WITH THE FOREGOING.