UNITED STATES of America

v.

Jonathan COOPER.

C.R. No. 86–044 L.

United States District Court,
D. Rhode Island,
First Division.

Sept. 4, 1987.

**754**

Kenneth Madden, U.S. Atty., U.S. Dist. Ct., Providence, R.I., for plaintiff.

Norman Zalkind, Kimberly Homan, John Wall, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER

LAGUEUX, District Judge.

On May 19, 1987, this Court issued a memorandum and show cause order directing Attorney Norman S. Zalkind of the Massachusetts Bar, co-counsel for defendant Jonathan Cooper, to appear on September 22, 1987 and show cause why he should not be adjudged in violation of certain provisions of the Code of Professional Responsibility of the Supreme Court of the State of Rhode Island[1] and his *pro hac vice* admission to practice in this case revoked. For the reasons set forth below, the Court concludes that transfer of this pending disciplinary matter to another judge of this Court is appropriate.

On April 30, 1987, defendants Cooper and Steven Lynn, through counsel, filed a mo-

tion to disqualify this trial judge from presiding over their joint drug conspiracy criminal trial. Defendants sought recusal pursuant to 28 U.S.C. §§ 144 and 455(a). Zalkind, appearing *pro hac vice* as co-counsel for defendant Cooper, submitted an affidavit in support of the motion to disqualify.

In his affidavit, Zalkind, *inter alia*, attributed this Court's earlier denial of defendants' motions to dismiss the indictment or, in the alternative, to exclude the testimony of Mitchell Fried, a potential government witness, to improper motives harbored by the Court.[2] In substance, the tenor of Zalkind's affidavit was that this Court's denial of defendants' motions was unsupported by the record and was the result of an alleged bias harbored by the Court against defendants' out-of-state counsel. Zalkind contended that the alleged prejudice resulted from this Court's involvement, approximately one year earlier, in a controversy with Alan Dershowitz, a publicity-seeking law professor and sometime criminal appellate lawyer who had criticized the Rhode Island judicial system in a book, entitled *Reversal of Fortune*, that he had just published about the Von Bulow case.

Specifically, Dershowitz had accused members of the Rhode Island bar and judiciary of unethical conduct in the Von Bulow affair (this writer was not involved in that matter). In an effort to promote the sale of his book in the spring of 1986, Dershowitz stated to the Rhode Island media that the judges in Rhode Island were corrupt.[3] This judge, then completing 18 years on the Rhode Island Superior Court and preparing to take a seat on this federal

---

1. Pursuant to rule 4(d) of the Local Rules of the United States District Court for the District of Rhode Island, the Code of Professional Responsibility of the Supreme Court of the State of Rhode Island serves as the standard of conduct for all attorneys practicing before this Court.

2. The full text of the Court's bench decision, rendered on April 10, 1987, denying defendants' motions to dismiss the indictment or, in the alternative, to exclude the testimony of Mitchell Fried is reported at 662 F.Supp. 913.

3. This was reminiscent of statements he had made in an earlier book published in 1982 entitled *The Best Defense*. There, he had stated, "lying, distortion and other forms of intellectual dishonesty are endemic among judges" and "[b]eneath the robes of many judges, I have seen corruption, incompetence, bias, laziness, meanness of spirit, and plain ordinary stupidity." Also, "[t]he American criminal justice system *is* corrupt to its core: it depends on a pervasive dishonesty by its participants." *Id.* at xvii-xviii.

bench, responded publicly to these unfounded charges of corruption by pointing out, among other things, that Dershowitz suffers from a spectacular lack of credibility.

Enter Harvey A. Silverglate, a Dershowitz friend, confidant, former student and disciple. Silverglate and an associate, purporting to be acting as counsel for Dershowitz, sent a letter, dated June 4, 1986, to this writer requesting, *inter alia*, that the Court engage in a public debate with their client. The Court did not reply to this infantile missive because the Court had already rejected Dershowitz's bid, made through the media, to a debate which was already known to Silverglate.

I took the oath of office on this bench on September 5, 1986 and in due course the joint indictment of Lynn and Cooper returned October 30, 1986 was assigned to me. A magistrate allowed Andrew Good and Judith Mizner, junior partners of Silverglate, to enter their appearance *pro hac vice* for Lynn and Zalkind and his partner, Kimberly Homan, for Cooper. They all pressed for an evidentiary hearing on their motions to dismiss the indictment, or in the alternative, to bar Fried's testimony. The Court acceded to that request. During the hearing, on March 18, 1987, Silverglate was presented as a witness by Mizner. Silverglate had been the co-architect of the scheme to entrap Fried which was implemented by Good, who had been the previous witness. Silverglate's role in the proceedings was to attempt to discredit the federal authorities (the U.S. Attorney's office and certain FBI agents in Massachusetts) that he and Good had enlisted to conduct the sting of Fried. His efforts were unavailing because this Court found that the federal authorities had acted "reasonably, expeditiously and in accordance with Government policy in all respects". *U.S. v. Cooper,* 662 F.Supp. 913, 918 (D.R. I.1987).

After the Court denied the motions by bench decision on April 10, 1987, Good, Mizner and the Silverglate firm withdrew from the representation of Lynn. John Wall of the Massachusetts Bar was allowed to enter his appearance *pro hac vice* for Lynn. Thereafter, Zalkind and his partner, Homan, who also had been a witness at the evidentiary hearing, filed a motion to disqualify this judge from presiding at Cooper's trial. Wall, on behalf of Lynn, joined in that motion. Zalkind filed the aforementioned affidavit in support of the motion. On May 4, 1987, although she had put her credibility on the line during the evidentiary hearing on defendants' motions to dismiss the indictment or exclude Fried's testimony, Homan argued in support of the recusal motion.

The Court denied the motion to disqualify. In so doing, the Court noted that defendants, by failing to set forth facts actually evincing or from which a reasonable person could reasonably conclude that this judge was biased or prejudiced against a party, had not met the requirements of either 28 U.S.C. § 144 or § 455. The defendants had attempted to demonstrate a vicarious form of judicial partiality. They did not contend that the Court harbored any direct bias against defendants personally. Rather, the substance of defendants' allegations, as well as those contained in Zalkind's affidavit, was that this Court was prejudiced against defense counsel. Further, to the extent that evidence of judicial bias or prejudice against an attorney may be relevant in determining a court's ability to afford a litigant an impartial adjudication, defendants' allegations that such bias existed here were entirely unsupported by the record.

Since Silverglate, Homan and Good were witnesses at the evidentiary hearing, these attorneys, as did all other witnesses, invited the Court to assess their credibility and determine the weight to be afforded to their testimony. The determination of such matters, as made by the Court in fulfilling its responsibilities as factfinder, cannot serve as a proper basis for an allegation of judicial bias or prejudice. In any event, defendants' allegations of lack of judicial impartiality were based primarily on this Court's alleged bias against Good, who the Court found not to be a credible witness and who by then had withdrawn as co-counsel in this case.

Further, Zalkind's attempt, through reference in his affidavit to completely irrelevant and extraneous matters such as the Dershowitz controversy, to discredit this Court's denial of defendants' alternative motions to dismiss the indictment or exclude Fried's testimony and to infer that the Court's decision was indicative of judicial bias or prejudice against defense counsel and therefore against the defendants themselves was found to be completely illogical and without merit. The affidavit failed to set forth any facts which in any way suggested any judicial bias or prejudice against defendants. Thus, in denying defendants' motion to disqualify this judge from presiding at their joint criminal trial, this Court indicated that Zalkind's affidavit was legally insufficient. In addition to concluding that the affidavit was insufficient under § 144 in that it was not made by a party, this Court found that the affidavit was false in some particulars, totally irrelevant to any § 144 issues, obviously made in bad faith and a scurrilous, scandalous personal attack on the integrity of this Court. In filing the affidavit, Zalkind obviously relied on information obtained from Silverglate or Dershowitz, or both. Zalkind was following the Dershowitz style of attacking the judge's integrity whenever an adverse decision is rendered by a court.[4] The Court continued the matter until May 19, 1987 in order to consider possible sanctions against Zalkind, including revocation of his *pro hac vice* status.

On May 19, 1987, this Court issued a memorandum and order in which it stated its belief that, by preparation and submission of the affidavit, Zalkind had engaged in unethical conduct. On that date, the Court also allowed Albert F. Cullen, Jr. of the Massachusetts Bar to enter his appearance *pro hac vice* for Zalkind in these disciplinary proceedings. Cullen shares office space with John Wall in Boston and they practice law under the firm name of Cullen and Wall.

Specifically, the Court concluded that Zalkind *prima facie* had violated the following provisions of the Code of Professional Responsibility of the Supreme Court of the State of Rhode Island:

"DR 1–102. Misconduct.—(A) A lawyer shall not:

\*　　\*　　\*　　\*　　\*　　\*

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

(5) Engage in conduct that is prejudicial to the administration of justice.

(6) Engage in any other conduct that adversely reflects on his fitness to practice law."

\*　　\*　　\*　　\*　　\*　　\*

"DR 7–102. Representing a Client within the Bounds of the Law.—(A) In his representation of a client, a lawyer shall not:

\*　　\*　　\*　　\*　　\*　　\*

(5) Knowingly make a false statement of law or fact."

\*　　\*　　\*　　\*　　\*　　\*

"DR 8–102. Statements Concerning Judges and Other Adjudicatory Officers.

\*　　\*　　\*　　\*　　\*　　\*

(B) A lawyer shall not knowingly make false accusations against a judge or other adjudicatory officer."

The Court stated its view that the most appropriate sanction for such violations is revocation of Zalkind's *pro hac vice* admission. Zalkind was ordered to appear on September 22, 1987 at 10 A.M. and show cause why he should not be adjudged in violation of the cited disciplinary rules and his *pro hac vice* status revoked.

By preparing and submitting the affidavit, Zalkind, *inter alia*, engaged in conduct comparable to that which was held to warrant disbarment in *In re Evans*, 801 F.2d

---

4. Dershowitz's latest gambit is to attack Justice Sandra Day O'Connor as "unethical, mendacious and below the minimum standards for any judge" (see "Another hipshot from Mr. Dershowitz," The Providence Journal, May 1, 1987) simply because she wrote the Court's opinion in *Tison v. Arizona*, — U.S. —, 107 S.Ct. 1676,

95 L.Ed.2d 127 (1987), a capital punishment case in which the Court's decision was contrary to his views and arguments. Dershowitz was losing appellate counsel in that case. He continues to use the technique of making unfounded attacks on the character of judges who do not agree with his position.

703 (4th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1349, 94 L.Ed.2d 520 (1987). There, a magistrate issued a report recommending that a case be dismissed for lack of subject matter jurisdiction. Over plaintiff's objections, the district court adopted the magistrate's report and ordered the case dismissed. Thereafter, plaintiff appealed to the Court of Appeals for the Fourth Circuit. During the pendency of the appeal, plaintiff's counsel wrote to the magistrate, contending that his report was the result of incompetence and/or religious and racial bias. Ultimately, the district court determined that, by making such accusations, counsel had violated three rules of professional responsibility: DR 1–102(A)(5) ("A lawyer shall not engage in conduct that is prejudicial to the administration of justice."); DR 7–106(C)(6) ("In appearing in his professional capacity before a tribunal, a lawyer shall not engage in undignified or discourteous conduct which is degrading to a tribunal."); and DR 8–102(B) ("A lawyer shall not knowingly make false accusations against a judge or other adjudicatory officer.") The court determined that disbarment from further practice in the district court was the appropriate sanction.

On appeal, the court of appeals affirmed the disbarment order. In so doing, the court held, *inter alia,* that counsel's failure to substantiate the serious charges leveled against the magistrate constituted the making of accusations which he knew or reasonably should have known to be false, in violation of DR 8–102(B).

On May 19, 1987, the date of issuance of the memorandum and show cause order, this Court, acting pursuant to Fed.R. Crim.P. 14, *sua sponte* ordered that defendants Lynn and Cooper be tried separately. Although counsel for Lynn objected to severance, this Court determined that such action was necessitated by the fact that, although Lynn's trial was ready to proceed, defendant Cooper's trial would have to be postponed until completion of the pending disciplinary proceedings.

On June 9, 1987, the Court of Appeals for the First Circuit denied defendants' petition for a writ of mandamus compelling this judge to disqualify himself from presiding over their criminal trial. *In re Cooper,* 821 F.2d 833 (1st Cir.1987). In concluding that this Court had not improperly declined to recuse itself, the court of appeals found that the affidavit submitted by Zalkind was facially insufficient. *Id.* at 838. The court added that the Dershowitz affair was irrelevant to the proceedings and that Zalkind's charge and overgeneralization from this Court's involvement in that controversy that this judge is prejudiced against Massachusetts attorneys could, not unreasonably, be viewed as a calculated insult. *Id.* at 843.

■ It is well settled that, prior to disbarment or imposition of monetary sanctions, an attorney must be afforded procedural due process protections of notice and an opportunity to be heard. *E.g. In re Ruffalo,* 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968); *Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1871); *Ex Parte Garland,* 71 U.S. (4 Wall.) 333, 18 L.Ed. 366 (1866) (disbarment cases). *Roadway Express v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980) (imposition of a monetary penalty upon attorney pursuant to 28 U.S.C. § 1927). *Hill v. Norfolk and Western Ry. Co.,* 814 F.2d 1192 (7th Cir.1987); *Eash v. Riggins Trucking,* 757 F.2d 557 (3rd. Cir.1985); *Miranda v. Southern Pacific Transportation Co.,* 710 F.2d 516 (9th Cir.1983) (monetary sanctions cases). However, any asserted right of an out-of-state attorney to appear *pro hac vice* is not a constitutionally protected interest. *Leis v. Flynt,* 439 U.S. 438, 99 S.Ct. 698, 58 L.Ed.2d 717 (1979).

In *Flynt,* an Ohio state court trial judge summarily denied applications for admission *pro hac vice* tendered by criminal defendants' out-of-state counsel. Ultimately, the defendants and their attorneys instituted a federal court action seeking to enjoin further prosecution of the criminal case until the state trial court conducted a hearing on the applications for admission *pro hac vice.* The district court granted the requested relief. In so doing, the court held that the lawyers' interest in represent-

ing the defendants was a constitutionally protected property right which the state court had infringed without according the attorneys procedural due process. The Court of Appeals for the Sixth Circuit affirmed, holding that the privilege of appearing *pro hac vice* could not be denied without, *inter alia*, a meaningful hearing.

On certiorari, the Supreme Court reversed. The Court held that counsel lacked any cognizable property interest within the terms of the Fourteenth Amendment to the United States Constitution in appearing *pro hac vice* in an Ohio court. Accordingly, the state court was not obligated to accord the attorneys procedural due process in passing on their applications for admission. *Id.* at 443–44, 99 S.Ct. at 701.[5]

In discussing counsel's lack of a cognizable property right to be admitted *pro hac vice* in the Ohio state court action, the Supreme Court noted that an enforceable claim of entitlement under state law to admission may be derived from a state statute or legal rule or through a "mutually explicit understanding." *Id.* at 442, 99 S.Ct. at 701 (citing *Perry v. Sindermann*, 408 U.S. 593, 601–02, 92 S.Ct. 2694, 2699–2700, 33 L.Ed.2d 570 (1972)). Revocation of *pro hac vice* admission not being an issue in the case, the Supreme Court did not address whether the initial conferral of such status would be sufficient, as a "mutually explicit understanding" or otherwise, to create a property right requiring conformity with procedural due process standards of notice and hearing prior to disqualification.

█ Regardless of whether an attorney who is admitted *pro hac vice* acquires a constitutionally protected interest in maintaining that status, some type of notice and hearing may be necessary prior to revocation. In *Johnson v. Trueblood*, 629 F.2d 302 (3rd Cir.1980), following a verdict in a shareholders' derivative action and without any prior notice or hearing, the district court, *sua sponte*, revoked the *pro hac vice* admission of plaintiffs' counsel. On appeal by plaintiffs and their attorney, the court

of appeals vacated the trial court's order. Without addressing appellants' claim of entitlement to a full hearing under the due process clause of the fifth amendment, the court of appeals concluded that some type of notice and an opportunity to respond are necessary when a district court seeks to revoke an attorney's *pro hac vice* status. *Id.* at 303. Such procedures are desirable for two reasons. First, "in this era of interstate practice of law", the view that *pro hac vice* status was conferred and held at the grace of the court is no longer as viable as it once was. *Id.* Second, such procedures ensure that the attorney's reputation and livelihood are not unnecessarily damaged, protect the client's interest and promote an appearance of regularity in the court's processes. *Id.* However, the court, noting that a *pro hac vice* admittee's temporary tenure as a member of the bar of the court places certain time constraints on the court's resolution of disciplinary matters, concluded that a full-scale hearing was not required in every case. The attorney need only be provided with a "meaningful opportunity to respond to identified charges." *Id.* at 304.

Further, this Court's local rules require that an attorney be afforded a hearing prior to imposition of disciplinary sanctions. Rule 4(e)(1) provides as follows:

(e) Disciplinary action.

(1) An attorney who is convicted of a crime against the United States or any State involving moral turpitude or who otherwise fails to comply with his oath or affirmation of admission to this bar may be suspended from practice in this court with or without conditions, or disbarred, or otherwise disciplined. Except as provided hereafter, such action shall not be taken unless the attorney has been afforded an opportunity to be heard before a panel composed of all active judges of this court and a majority of the judges composing the panel concur in the issuance of an order directing that such action be taken.

---

5. The Court did not address the issue of whether summary denial of counsel's applications for admission *pro hac vice* was violative of *defendants'* constitutional rights.

Although Rule 4 is entitled "Bar of the District Court", subsection (e)(1) neither explicitly provides that the disciplinary procedures articulated therein are applicable only to fully admitted members of the bar of this Court nor specifies a separate method for disciplining *pro hac vice* admittees. Rule 5(c) defines the procedures for procuring an admission *pro hac vice* but is silent on the matter of disciplinary proceedings. An examination of the local rules in their entirety suggests that the disciplinary procedures, including the hearing requirement, set forth in Rule 4(e)(1) are intended to apply equally to all attorneys appearing before the district court regardless of their provisional status.

Pursuant to Local Rule 4(d), the Code of Professional Responsibility of the Supreme Court of the State of Rhode Island sets forth the standard of conduct for all attorneys practicing before this Court. If the disciplinary procedures set forth in Rule 4(e)(1) were intended to apply only to breaches of this standard by resident attorneys, less inclusive terminology, such as "member of the bar of this court," [6] a phrase which appears elsewhere in the rules, would have been used. Instead, Rule 4(e)(1) employs only the more encompassing term, "attorney."

A determination that the hearing requirement of Rule 4(e)(1) is equally applicable to all attorneys regardless of their provisional status is consistent with the third circuit's reasoning in *Johnson v. Trueblood, supra. See Koller v. Richardson-Merrell, Inc.,* 737 F.2d 1038 (D.C.Cir.1984) (noting absence of any such distinction in the district court's local rules, court held that *pro hac vice* counsel, once admitted, are held to the same ethical standards as, and thus not subject to disqualification more readily than are regularly admitted counsel.), *vacated,* 472 U.S. 424, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985). *See also Cooper v. Hutchinson,* 184 F.2d 119 (3rd Cir.1950) (court, interpreting New Jersey state court

rules concluded that, although under the rules admission *pro hac vice* was within the court's discretion, the rights and duties of an out-of-state lawyer, once admitted, were identical to those of a local attorney. In so doing, the court noted that "[t]here are numerous instances in the law where one, through voluntary action by another, acquires rights which he did not have before." *Id.* at 123.)

■ Regardless of whether an attorney is entitled to notice and hearing prior to revocation of his *pro hac vice* admission, use of such procedural safeguards serves to protect a defendant's constitutional rights in a criminal case. Further, the facts and circumstances of this case, considered in light of the defendant's sixth amendment rights, suggest that referral of the pending disciplinary matter to another judge is fitting and proper.

It is well settled that an essential component of the sixth amendment right to counsel is that the accused be afforded a fair opportunity to secure counsel of his own choice. *U.S. v. Panzardi Alvarez,* 816 F.2d 813, 815 (1st Cir.1987) (quoting *Powell v. Alabama,* 287 U.S. 45, 53, 53 S.Ct. 55, 58, 77 L.Ed. 158 (1932)). By affidavit, defendant Cooper has informed this Court that he wishes to continue to be represented by Zalkind. Although the right to counsel of choice is not absolute, this right cannot be arbitrarily denied. *See In re Cooper,* 821 F.2d at 843 ("due deliberation should be given before taking the extraordinary step of depriving Cooper of his counsel of choice.") *See also Cooper v. Hutchinson,* 184 F.2d at 123 (counsel admitted *pro hac vice* in a capital case cannot be arbitrarily and capriciously removed without depriving their clients of their constitutional rights).

The affidavit submitted by Zalkind has been recognized by both this Court and the court of appeals as constituting a personal attack on the trial judge. "[T]he affidavit

---

**6.** Local Rule 4(a) defines "member of the bar of this court" as "an attorney actively engaged in the practice of law within the State of Rhode Island, who maintains an office within this State for that practice, who is a member in good standing of the bar of the Supreme Court of the State of Rhode Island, and who has been duly admitted to practice before the bar of this Court."

contains little more than a series of misstatements of fact and unsubstantiated, false and conclusory allegations, made under oath, which constitute a scurrilous, personal attack upon the integrity of this Court." *United States v. Cooper*, Cr. No. 86–44–L, Memorandum and Show Cause Order at 3 (D.R.I. May 19, 1987). "Zalkind's charge and overgeneralization * * * that Judge Lagueux is prejudiced both against Massachusetts attorneys and in favor of Rhode Island ones could, not unreasonably, be viewed as a calculated insult." *In re Cooper*, 821 F.2d at 843.

This Court has stated that if Zalkind is ultimately found to have violated ethical standards, revocation of his *pro hac vice* admission may well be the appropriate sanction. Disqualification of a criminal defendant's counsel of choice implicates sixth amendment concerns. Prior to denying a defendant of representation by chosen counsel, the Court must first balance the defendant's interest in retaining counsel of his choice against the public's interest in the prompt, fair and ethical administration of justice. *Panzardi Alvarez*, 816 F.2d at 817. In view of the highly personal nature of Zalkind's attack upon this Court and the court of appeal's characterization of this Court's reaction as "highly charged", *In re Cooper*, 821 F.2d at 843, it is appropriate that such balancing be performed by another judge. Regardless of whether transfer of the disciplinary proceeding is necessary in order to fully protect defendant's constitutional rights, reassignment will best serve to preserve the appearance of fairness and justice in this case.

No federal statute specifies when transfer of disciplinary proceedings is appropriate. Similarly, neither this Court's local rules nor the Federal Rules of Civil Procedure address this issue. However, 28 U.S.C. § 455(a), a general provision governing disqualification of judges, is instructive. Section 455(a) provides:

Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

The statute sets forth an objective test for determining the appropriateness of recusal. Unlike 28 U.S.C. § 144, the existence of actual bias or prejudice is not a prerequisite for disqualification under § 455. Rather, the applicable standard is whether a reasonable person, having knowledge of all of the facts and circumstances, would harbor doubts concerning the judge's impartiality. *U.S. v. Greenough*, 782 F.2d 1556 (11th Cir.1986); *Union Carbide Corp. v. U.S. Cutting Service*, 782 F.2d 710 (7th Cir.1986); *Chitamacha Tribe of Louisiana v. Harry L. Laws Company*, 690 F.2d 1157 (5th Cir.1982), *cert. denied*, 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983). The key inquiry is whether the facts would create a reasonable doubt concerning the judge's impartiality, not in the mind of the judge or the litigants, but rather in the mind of the reasonable person. *U.S. v. Martorano*, 620 F.2d 912 (1st Cir.1980), *cert. denied*, 449 U.S. 952, 101 S.Ct. 356, 66 L.Ed.2d 216; *U.S. v. Cowden*, 545 F.2d 257 (1st Cir.1976), *cert. denied*, 430 U.S. 909, 97 S.Ct. 1181, 51 L.Ed.2d 585 (1977).

In *Matter of Yagman*, 796 F.2d 1165 (9th Cir.), *as amended*, 803 F.2d 1085 (1986), an attorney appealed from a district court imposition, pursuant to 28 U.S.C. § 1927, Fed. R.Civ.P. 11 and the district court's local rules, of monetary sanctions against him and his professional corporation. At the suggestion of the trial judge, the sanctions had been sought by defendants in a defamation action following direction of a verdict in their favor. In imposing sanctions in the amount of $250,000, the trial judge concluded that the attorney had pursued the action vexatiously and in bad faith from the time of institution of the suit.

Although the court of appeals, in addressing the substantive questions presented, reversed the award and remanded the matter for further proceedings, it held that the trial justice's failure to, *sua sponte*, disqualify himself from the sanctions proceedings was neither a denial of due process nor a violation of 28 U.S.C. § 455. Although the attorney and the trial judge had clashed several times during the trial

over various objections, evidentiary matters and rule violations, the record lacked the type of personal embroilment or derogatory attacks leveled at the trial justice as would ordinarily carry such potential for bias as to require disqualification as a matter of due process. *Id.* at 1181 (citing *Mayberry v. Pennsylvania,* 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971)). Further, these encounters did not provide any reasonable basis to question the impartiality of the trial justice so as to require disqualification under § 455. *Id.* 796 F.2d at 1182.

However, the court concluded that, on remand, the matter should be reassigned to another judge. Although the court of appeals found no evidence of judicial bias and did not doubt the trial judge's ability to act fairly, reassignment was necessary in order to preserve the appearance of justice. *Id.* at 1188.

> "This case has had an unbecoming quality from its beginning. We do not appreciate nor condone the attorney bickering and misconduct which has pervaded the action and which spawned the district court's ire. Nevertheless, the massive sanction award and the numerous allegations of [judicial] bias and overreaching have combined with this poor lawyering to produce an entirely unfortunate end result: the fragile appearance of justice has taken a beating." *Id.*

In view of the nature of Zalkind's personal attack upon the integrity of this Court, application of the ninth circuit's reasoning suggests that transfer of the pending disciplinary proceeding is a reasonable approach here.

Other courts which have considered the propriety of referral of disciplinary proceedings to a judge other than the one before whom the alleged attorney misconduct occurred have failed to articulate guidelines sufficient to assist this Court in determining whether transfer of the instant disciplinary matter is indicated.

For example, in *Johnson v. Trueblood, supra.,* the court of appeals, in vacating the district court's revocation of an attorney's *pro hac vice* admission, stated that, in view of circumstances of the case and the tensions which existed between the parties and between the plaintiffs and the trial judge during the trial of the underlying action, if the matter of revocation was to be pursued further on remand, it should be assigned to another judge. 629 F.2d at 304. Although the various circumstances in the underlying shareholders' derivative action's lengthy travel to which the court of appeals referred included the trial court's denial of plaintiffs' 28 U.S.C. § 144 recusal motion and the third circuit's subsequent denial of plaintiffs' petition for a writ of mandamus to compel the trial judge's recusal, the court did not specify which factors, if any, it deemed controlling in determining that a different judge should preside over any subsequent revocation proceedings. Further, the court expressly stated that it was not deciding whether in every case such proceedings must be conducted before a judge other than the judge presiding over the trial of the underlying action. *Id.*

A court's broad power to discipline attorneys as officers of the court for misconduct is substantially different from and proceeds upon very different grounds than the court's power to punish for contempt. *Eash v. Riggins Trucking,* 757 F.2d at 565–66 (quoting *Cammer v. United States,* 350 U.S. 399, 408 n. 7, 76 S.Ct. 456, 460 n. 7, 100 L.Ed. 474 (1956) and *Ex Parte Robinson,* 86 U.S. (19 Wall.) 505, 512, 22 L.Ed. 205 (1873)). However, consideration of procedural rules and Supreme Court decisions governing reassignment of the latter type of proceeding suggests that recusal is appropriate in the pending disciplinary matter.

Fed.R.Crim.P. 42(a) provides that "[a] criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court." Pursuant to Rule 42(b), all other criminal contempts must be prosecuted on notice. Rule 42(b) further provides in pertinent part as follows:

If the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the defendant's consent.

Although Rule 42(a) lacks such a transfer provision, the Supreme Court has held that, under certain circumstances and although the summary disposition procedures set forth in 42(a) would otherwise be applicable, due process mandates that the alleged contemnor be afforded notice and an adjudication of the charges before a judge other than the one before whom the misconduct occurred.

■ First, reassignment is necessary where the contemptuous conduct provokes the trial judge and "so embroil[s] him in controversy that he cannot 'hold the balance nice, clear, and true between the state and the accused.'" *Taylor v. Hayes*, 418 U.S. 488, 501, 94 S.Ct. 2697, 2704, 41 L.Ed. 2d 897 (1974) (quoting *Tumey v. Ohio*, 273 U.S. 510, 532, 47 S.Ct. 437, 444, 71 L.Ed. 749 (1927)). In making this determination, "the inquiry must be not only whether there was actual bias on the [judge's] part, but also whether there was 'such a likelihood of bias or an appearance of bias that the judge was unable to hold the balance between vindicating the interests of the court and the interests of the accused.'" *Taylor v. Hayes*, 418 U.S. at 501, 94 S.Ct. at 2704 (quoting *Ungar v. Sarafite*, 376 U.S. 575, 588, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964)). Second, transfer of the contempt proceedings to another judge is mandated where the alleged contempt consists of a personal attack on the trial judge and the attack is of such a nature that, regardless of the judge's reaction, he would be unlikely "to maintain that calm detachment necessary for fair adjudication." *Id.* at 501, 94 S.Ct. at 2704 (quoting *Mayberry v. Pennsylvania*, 400 U.S. at 465, 91 S.Ct. at 505).

Thus, in cases involving a personal attack on a judge, reassignment of any resulting contempt proceeding is mandated not only when the judge has become "personally embroiled" with the alleged contemnor but also when, regardless of the judge's personal feelings or lack of any outward reaction, the attack is such that "a judge of ordinary sensibilities might naturally be expected to harbor 'marked personal feelings' against the attacker." *United States v. Meyer*, 462 F.2d 827, 839 (D.C.Cir. 1972) (citing *Mayberry v. Pennsylvania, supra*). Where the attack is of such a nature, "the law must assume that [marked personal] feelings exist, even though the judge, through admirable forbearance, gives no outward indication that he has been personally affected." *Meyer*, 462 F.2d at 839. Disqualification is necessary in such a case, *inter alia*, to protect the integrity of the judiciary by guarding against public suspicion of personal animosity on the part of the trial justice. *Id.* "[J]ustice must satisfy the appearance of justice." *Offutt v. United States*, 348 U.S. 11, 14, 75 S.Ct. 11, 13, 99 L.Ed. 11 (1954).

Thus, for example, in *Mayberry v. Pennsylvania, supra*, in light of the nature of a contemnor's transgressions, due process of law required that criminal contempt charges be adjudicated before a judge other than the one before whom the misconduct occurred. During the course of his state criminal trial, petitioner had engaged in a continuous verbal attack against the trial judge. Many of the comments leveled at the judge were highly personal aspersions and fighting words. At the conclusion of the trial, the judge summarily adjudged petitioner and two co-defendants guilty of criminal contempt. In vacating the contempt convictions, the Supreme Court held that, although the trial judge was not "an activist seeking combat" but was simply "the target of petitioner's insolence," due process mandated referral of the contempt proceedings to a different judge. "[A] judge, vilified as was this Pennsylvania judge, necessarily becomes embroiled in a running, bitter controversy. No one so cruelly slandered is likely to maintain that calm detachment necessary for fair adjudication." *Id.* 400 U.S. at 465, 91 S.Ct. at 505.

Regardless of whether Zalkind's personal attack upon the integrity of this Court would be viewed by the Supreme Court as having so embroiled this judge in contro-

versy so as to require disqualification as a matter of due process or of right, transfer of the pending disciplinary proceedings to another judge is a sound approach under the circumstances. Although not all personal attacks *require* recusal, *Id.; see Sacher v. United States,* 343 U.S. 1, 72 S.Ct. 451, 96 L.Ed. 717 (1952), transfer of any resulting criminal contempt proceedings is often *preferable.*

"[W]here conditions do not make it impracticable, or where the delay may not injure public or private right, a judge, called upon to act in a case of contempt by personal attack upon him, may, without flinching from his duty, properly ask that one of his fellow judges take his place." *Cooke v. United States,* 267 U.S. 517, 539, 45 S.Ct. 390, 396, 69 L.Ed. 767 (1925).

For the above reasons, in view of Zalkind's scandalous personal attack upon the integrity of this Court, transfer of the pending disciplinary matter is entirely appropriate. Reassignment will best serve to maintain the appearance of justice both in determining whether Zalkind has violated ethical standards and, if necessary, in balancing the defendant's interest in retaining his chosen counsel against the public's interest in the prompt, fair and ethical administration of justice.

Local Rule 4(e)(1) provides that attorney disciplinary hearings shall be conducted before a panel of all active judges of this court. Chief Judge Francis J. Boyle and this writer are the only active judges presently sitting in the District of Rhode Island. Accordingly, the pending disciplinary proceedings concerning Zalkind are hereby transferred to Chief Judge Boyle for *de novo* consideration. This Court stands ready to preside over the trial of Jonathan Cooper when this disciplinary matter is resolved, whether or not Zalkind is still counsel in the case.

*It is so Ordered.*